RECORD NO. 13-5053

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

## For The District of Columbia Circuit

# LIFE EXTENSION FOUNDATION, INC.,

*Plaintiff – Appelant*,

**v.**

# INTERNAL REVENUE SERVICE,

*Defendant – Appellee*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

―――――――――

## BRIEF OF APPELLANT

―――――――――

*Nancy O. Kuhn
James N. Markels
JACKSON &amp; CAMPBELL, P.C.
1120 Twentieth Street, N.W.
South Tower, Third Floor
Washington, DC  20036
(202) 457-1600

*Counsel for Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**(A)** **Parties and Amici**: Life Extension Foundation, Inc., and the Internal Revenue Service. There are no other parties or amici.

**(B)** **Rulings Under Review**: (1) January 16, 2013 Memorandum Opinion of Judge Richard J. Leon, published at 915 F. Supp. 2d 174 (D.D.C. 2013), Appendix at 52-70; and (2) the January 16, 2013 Final Order of Judge Richard J. Leon, Appendix at 71.

**(C)** **Related Cases**: None.

## FED. R. APP. P. 26.1 STATEMENT

Appellant Life Extension Foundation, Inc., a non-stock corporation, hereby states that no parent or publicly-held corporation owns 10% or more of Life Extension Foundation, Inc.'s stock.

i

# TABLE OF CONTENTS

Table of Authorities ................................................................................ iii

Glossary..................................................................................................1

Jurisdictional Statement ..........................................................................1

Statement of Issues Presented on Appeal ................................................2

Statement of Relevant Facts....................................................................3

Summary of Argument.............................................................................6

Argument.................................................................................................6

    I.     Standard of Review .......................................................7

    II.    The District Court Incorrectly Used A Heightened Standard In Analyzing Whether The Withheld Documents Qualified For Exemption ....................................................................9

    III.   The District Court Erred In Relying On The IRS's Affidavits Instead of Reviewing The Withheld Documents *In Camera* To Determine Whether Any Segregable Information Should Be Produced In Response To The Foundation's FOIA Request..............12

    IV.   The District Court Erred In Relying On The IRS's *In Camera* Affidavits Instead of Reviewing The Withheld Documents *In Camera* To Determine Whether Any Segregable Information Should Be Produced In Response To The Foundation's FOIA Request ...........................................................18

Conclusion ............................................................................................20

Certificate of Compliance

Certificate of Filing and Service

Addendum

ii

# TABLE OF AUTHORITIES

**Cases---**

*Allen v. CIA*,
　　636 F.2d 1287 (D.C. Cir. 1980)............................................................13, 17

*Calhoun v. Johnson*,
　　632 F.3d 1259 (D.C. Cir. 2011)......................................................................8

*Campbell v. Dept. of Justice*,
　　164 F.3d 20 (D.C. Cir. 1998)................................................................. 14-16

*Coastal States Gas Corp. v. Dept. of Energy*,
　　617 F.2d 854 (D.C. Cir. 1980)................................................................9, 17

*Dept. of Justice v. Reports Committee for Freedom of the Press*,
　　489 U.S. 749 (1989)......................................................................................9

*EPA v. Mink*,
　　410 U.S. 73 (1973).......................................................................................13

*Founding Church of Scientology of Washington, D.C., Inc. v. Smith*,
　　721 F.2d 828 (D.C. Cir. 1983).....................................................................13

*Halperin v. CIA*,
　　629 F.2d 144 (D.C. Cir. 1980).....................................................................11

*Hayden v. NSA*,
　　608 F.2d 1381 (D.C. Cir. 1979)........................................................ 10-12, 18

*Investment Co. Institute v. Commodity Futures Trading Com'n*,
　　720 F.3d 370 (D.C. Cir. 2013)......................................................................8

*Jones v. Federal Bureau of Investigation*,
　　41 F.3d 238 (6th Cir. 1994) ..........................................................................7

\*Authorities upon which we chiefly rely are marked with asterisks.

*Larson v. Dept. of State*,
    565 F.3d 857 (D.C. Cir. 2009)....................................................................8, 10

*Lathram v. Snow*,
    336 F.3d 1085 (D.C. Cir. 2003) ......................................................................8

*Lykins v. Dept. of Justice*,
    725 F.2d 1455 (D.C. Cir. 1984) .............................................................. 18-19

*Mapother v. Dept. of Justice*,
    3 F.3d 1533 (D.C. Cir. 1993) ........................................................................13

*McKenzie v. Sawyer*,
    684 F.2d 62 (D.C. Cir. 1982)..........................................................................8

*Mead Data Central, Inc. v. U.S. Dept. of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977)..................................................... 13, 16-17, 19

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981)................................................................. 10-11

*Playboy Enterprises, Inc. v. Dept. of Justice*,
    677 F.2d 931 (D.C. Cir. 1982)......................................................................15

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991)....................................................................14

*Tax Analysts v. IRS*,
    410 F.3d 715 (D.C. Cir. 2005)..................................................................8, 14

*U.S. Dept. of Justice v. Tax Analysts*,
    492 U.S. 136 (1989)........................................................................................9

*U.S. Dept. of State v. Ray*,
    502 U.S. 164 (1991)........................................................................................9

* *Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973)..........................................................7, 13, 17

iv

*Weissman v. CIA*,
    565 F.2d 692 (D.C. Cir. 1977)........................................................................11

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007)......................................................................10

**Statutes---**

* 5 U.S.C. § 552.......................................................... 1-3, 7, 9-10, 15-16, 19

26 U.S.C. § 6103...........................................................................................3, 16

28 U.S.C. § 1291.................................................................................................1

28 U.S.C. § 1331............................................................................................1, 3

**Rules---**

Fed. R. Civ. P. 56...............................................................................................8

## GLOSSARY

1. "Foundation" shall mean Appellant Life Extension Foundation, Inc.

2. "IRS" shall mean the Internal Revenue Service.

3. "FOIA" shall mean the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*

4. "Withheld Documents" shall mean the eight documents withheld in part and 89 documents withheld in full by the IRS in response to the Foundation's FOIA request.

## JURISDICTIONAL STATEMENT

Appellant Life Extension Foundation, Inc. (the "Foundation") initiated this matter in the U.S. District Court for the District of Columbia. As a lawsuit brought under the Freedom of Information Act ("FOIA"), the district court had jurisdiction over the case pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. On January 16, 2013, the district court entered an Order granting summary judgment to Defendant Internal Revenue Service (the "IRS") as to the Foundation's claims. The Foundation timely filed its notice of appeal of that Order on February 11, 2013. This Court has jurisdiction over the Order of the district court pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED ON APPEAL

1. The district court erred in using a heightened standard that has been used by this Court to limit disclosure of classified documents, the disclosure of which could be a threat to national security, instead of the lower standard narrowly construing FOIA exemptions to allow for greater disclosure of non-classified documents.

2. The district court erred in relying on affidavits provided by the IRS instead of reviewing the subject documents *in camera* to independently determine if any segregable information could be produced in response to the Foundation's Freedom of Information Act request, given that no Vaughn Index was provided, there were not many documents at issue, and the IRS had not shown such information was inextricably intertwined with any alleged exempt information.

3. The district court erred in relying on *in camera* declarations provided by the IRS in finding that the IRS had properly invoked 5 U.S.C. § 552(b)(3) and (b)(7)(D) instead of reviewing the subject documents *in camera* to independently determine if those exemptions applied, given that no Vaughn Index was provided, there were few documents at issue, and the Foundation was unable to test the veracity of the *in camera* affidavit.

2

## STATEMENT OF RELEVANT FACTS

The Foundation submitted its FOIA request to the IRS on July 21, 2011, requesting "the examination file with regard to the recent examination conducted by agents from the Tax Exempt and Government Entities Examination Division in Independence, MO for taxable years 2006, 2007, and 2008." Appendix at 6-7. By letter dated November 10, 2011, the IRS responded to the Foundation's request by stating that it had identified 329 pages that were responsive to the Foundation's request, but only produced 232 pages, withholding 8 pages in part and 97 pages in full. *Id.* at 10-11. The IRS invoked the FOIA exemptions under 5 U.S.C. §§ 552(b)(3), (b)(5), and (b)(7)(D) to withhold those documents or portions thereof. *Id.*

By letter dated December 8, 2011, the Foundation timely appealed the IRS's decision to withhold documents to the office of IRS Appeals. *Id.* at 12-18. By letter dated January 20, 2012, the IRS denied the Foundation's appeal and additionally asserted FOIA exemptions under 5 U.S.C. § 552(b)(3), in conjunction with 26 U.S.C. § 6103(b)(2) and 5 U.S.C. § 552(b)(7)(E) to withhold the requested documents. *Id.* at 23-26. Its administrative remedies exhausted, the Foundation filed suit in the U.S. District Court for the District of Columbia pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. *Id.* at 1-26.

After the Foundation's lawsuit was filed, the IRS determined that, of the 329 pages initially determined to be responsive to the Foundation's FOIA request, only 307 were actually responsive, with the other 22 pages being non-responsive. *Id.* at 34. The IRS also produced another eight (8) pages in full that were previously withheld. *Id.* at 34-35. The Foundation challenged the IRS's determination with regard to the 22 pages. Thus, the Withheld Documents at issue in this case consist of the eight documents withheld in part and 89 documents withheld in full.

The parties filed cross-motions for summary judgment. The IRS's motion included two (2) affidavits, one by Carlton W. King, an IRS attorney, and one by Stephen Danish, an IRS disclosure specialist. *Id.* at 32-46. Mr. Danish's affidavit contained statements regarding the search for documents responsive to the Foundation's FOIA request, and that the IRS Office of Disclosure decided to not produce the Withheld Documents following his review and recommendation. *Id.* at 44-46. Mr. King's affidavit makes a series of boilerplate, conclusory statements about the IRS's reasoning for why the Withheld Documents qualified for exemption. *Id.* at 32-43. The IRS also filed certain declarations under seal, none of which were revealed to the Foundation.

By a memorandum opinion entered on January 16, 2013, the district court granted summary judgment to the IRS and denied summary judgment to the Foundation, holding that the IRS had sufficiently demonstrated that the Withheld

Documents fell within the cited FOIA exemptions based on affidavits attached to the IRS's Motion for Summary Judgment, including some declarations submitted *in camera*. *Id.* at 52-70. The district court did not review the Withheld Documents, nor did the IRS submit a Vaughn Index.

The Foundation timely filed its notice of appeal of the district court's ruling on February 11, 2013. *Id.* at 72-73.

## SUMMARY OF ARGUMENT

The district court erroneously applied the wrong legal standard in its review of the Foundation's FOIA request of tax documents from the IRS. As a result, the district court did not create a proper record, did not perform a true *de novo* review of the IRS's decision to withhold documents, and improperly relied solely on the IRS's affidavits, including declarations submitted *in camera*, for its decision. Given that the number of documents at issue is small, the district court should have performed an *in camera* review of the withheld documents, or at least required a Vaughn index or other additional information from the IRS in order to ensure that the withheld documents qualified for the claimed exemptions and there was no segregable information that could be released.

## ARGUMENT

The district court erred in granting summary judgment to the IRS and denying summary judgment to the Foundation in several respects. First, the district court applied a heightened standard reserved for FOIA requests of documents concerning matters of national security in examining the IRS's claim of exemption, when no such documents were requested by the Foundation, thus improperly tipping the scales against the Foundation. Second, the district court failed to create a proper record for reviewing the Withheld Documents and did not have sufficient information to determine whether the IRS's claims of exemption applied. Instead,

the district court improperly relied on the IRS's affidavits—some of which were submitted *in camera* and thus could not be rebutted by the Foundation—without requiring the IRS to submit a Vaughn Index, without performing an *in camera* inspection of the documents, and without performing the segregability analysis FOIA requires. This Court should reverse the ruling of the district court and remand this case so that the district court can perform the proper analysis of the Foundation's FOIA claim.

## I.    Standard of Review.

FOIA claims present a "seriously distort[ed version of] the traditional adversary nature of our legal system's form of disputed resolution[,]" given that the Foundation, the party seeking disclosure, is prevented from knowing the facts relevant to the dispute. *Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973). Unless the trial court reviews the documents at issue *in camera*, pursuant to 5 U.S.C. § 552(a)(4)(B), "even the Court does not know." *Jones v. Federal Bureau of Investigation*, 41 F.3d 238, 242 (6th Cir. 1994). "The problem is compounded at the appellate level[,]" given the difficulty of reviewing "the appropriateness of a trial court's characterization of the factual nature of the information . . . without the controverting illumination that would ordinarily accompany a request to review a lower court's factual determination; [the appellate court] must conduct its own investigation into the document." *Vaughn*, 484 F.2d at 825.

As in other kinds of cases, summary judgment is appropriate in a FOIA case if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), *Investment Co. Institute v. Commodity Futures Trading Com'n*, 720 F.3d 370, 376 (D.C. Cir. 2013). This Court reviews a district court's grant of summary judgment *de novo*. *Calhoun v. Johnson*, 632 F.3d 1259, 1261 (D.C. Cir. 2011), *and see Tax Analysts v. IRS*, 410 F.3d 715, 720 (D.C. Cir. 2005) (applied to FOIA case). On an appeal of a grant of summary judgment, this Court must view the facts and the reasonable inferences drawn therefrom in the light most favorable to the losing party below—here, the Foundation. *Calhoun*, 632 F.3d at 1261 (*quoting Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003)), *and see Tax Analysts*, 410 F.3d at 719-20 ("The agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact…"). Where there are cross-motions for summary judgment, each motion is considered separately. *See McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982).

The decision of the district court to not conduct an *in camera* review of the Withheld Documents should be reviewed for abuse of discretion. *See Larson v. Dept. of State*, 565 F.3d 857, 869 (D.C. Cir. 2009).

## II.    The District Court Incorrectly Used A Heightened Standard In Analyzing Whether The Withheld Documents Qualified For Exemption.

In its Memorandum Opinion, the district court used a standard of review appropriate only for FOIA requests of national security materials, when no such documents were requested here. The result was that the district court was inappropriately deferential to the IRS in weighing the Foundation's FOIA claim.

FOIA generally requires complete disclosure of requested agency information unless that information falls into one of FOIA's nine narrowly-construed exemptions. 5 U.S.C. § 552(b); *and see, U.S. Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989); *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) ("The clear purpose of the FOIA is to assure that the public has access to all government documents, subject to only nine specific limitations, to be narrowly interpreted, which Congress decided were necessary to protect our national interest and permit the efficient operation of the government."). "[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dept. of State v. Ray*, 502 U.S. 164, 173 (1991).

Normally, the agency is not entitled to any deference in its judgment as to whether it has met its burden under FOIA. *See Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. §

552(a)(4)(B) (contrasting FOIA review with the standard for reviewing other agency actions). However, this Court has recognized that "the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects (sic) might occur as a result of public disclosures of a particular classified record." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).[1] In such a situation, courts must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Id.*

This case concerns a FOIA request for tax records from the IRS, and not anything that might be construed as pertaining to national security. Yet the district court described its standard of review entirely through cases that concerned FOIA requests targeting materials that related to national defense or foreign policy. The district court relied upon, in part, *Larson*, 565 F.3d 857 (FOIA request for documents from the National Security Agency ("NSA"), the Central Intelligence Agency ("CIA"), and the Department of State related to violence in Guatemala); *Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) (FOIA request for documents from the CIA and Federal Bureau of Investigation regarding the assassination of a former Colombian presidential candidate); *Hayden v. NSA*, 608 F.2d 1381 (D.C. Cir.

---

[1] Such classified information would likely fall under FOIA's first exemption that prevents disclosure of those matters "specifically authorized under criteria established by an Executive order to be kept secret in the interest of the national defense or foreign policy[.]" 5 U.S.C. § 552(b)(1).

10

1979) (FOIA request for documents obtained through NSA's monitoring of foreign

electromagnetic signals); *Military Audit Project*, 656 F.2d 724 (FOIA request

concerning secret CIA project); and *Halperin v. CIA*, 629 F.2d 144 (D.C. Cir.

1980) (FOIA request of CIA documents relating to private attorneys retained by

the agency).[2]

     Under these cases, "secrecy concerns are greater . . . than is usual in FOIA

cases." *Hayden*, 608 F.2d at 1385. It is reasonable for a court in national security

cases to find that "public itemization and detailed justification [for exemption]

would compromise legitimate secrecy interest, thus making it appropriate to

receive affidavits in camera rather than in public." *Id.* In addition, *in camera*

inspection of documents is considered a "last resort" in FOIA cases concerning

issues of national security. *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977).

In such situations, the district court can properly perform its *de novo* review based

on just the affidavits provided by the agency, provided there is enough "specific

information sufficient to place the documents within the exemption category."

*Hayden*, 608 F.2d at 1387. But these concerns do not touch "most other types of

cases[,]" such as this one. *Id.* at 1385.

     By framing this case in the terms of a FOIA request for documents

concerning national security, the district court granted a heightened standard of

---

[2] *See* Appendix at 55-56.

deference to the IRS, both in determining whether the IRS has met its burden of proving that the Withheld Documents were subject to the exemptions, and whether the IRS could meet that burden solely through affidavits, some submitted *in camera*, when the information contained therein could not possibly compromise a national security interest. As discussed in the next two sections, this preliminary error by the district court tainted its analysis and led it to incorrectly grant summary judgment to the IRS.

**III.    The District Court Erred In Relying On The IRS's Affidavits Instead of Reviewing The Withheld Documents *In Camera* To Determine Whether Any Segregable Information Should Be Produced In Response To The Foundation's FOIA Request.**

By relying entirely on conclusory affidavits from the IRS, the district court failed to create an adequate record with which to properly judge whether any of the Withheld Documents, or portions thereof, qualified for exemption. This Court should remand the case so that a proper review can be conducted, preferably through an *in camera* review of the Withheld Documents given that there are not many at issue.[3]

---

[3] Since the material requested does not relate to national security, it would be appropriate for the Foundation's counsel to participate in the *in camera* review subject to a protective order. *See Hayden*, 608 F.2d at 1388 (discussing Senate Report that noted, with approval, an instance where a private attorney for a FOIA complainant was allowed full access to the Treasury Department's files subject to an agreement that only information ordered disclosed by the court would be publicly revealed).

This Court has recognized "that the question of segregability is completely dependent on the actual content of the documents themselves and that the requesting party is helpless to counter agency claims that there is no non-exempt and reasonable segregable material within a withheld document." *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). This has led this Court to require in most instances an index pursuant to *Vaughn*. Where there are not "hundreds or even thousands" of documents at issue, *in camera* examination of the documents being withheld is appropriate. *See Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973); *Mapother v. Dept. of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (relying on *in camera* review of a 204-page report); *Allen v. CIA*, 636 F.2d 1287 (D.C. Cir. 1980) (citing considerations such as judicial economy, the conclusory nature of the agency's affidavits, evidence of agency bad faith, disputes about the contents of the document, strong public interest, and consent of the agency), *overruled on other grounds* in *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828 (D.C. Cir. 1983). The U.S. Supreme Court has also noted that selecting a representative sample of the documents at issue for *in camera* inspection may also be appropriate in some instances. *See EPA v. Mink*, 410 U.S. 73, 93 (1973). A trial court also has the discretion to appoint a "special master" to review the documents and determine whether the agency's claim of exemption applies. *Vaughn*, 484 F.2d at 828. The

13

important point is that the trial court create an "adequate record," which can be achieved through *in camera* review, a Vaughn index, or a mix of sources. *Tax Analysts*, 410 F.3d at 720.

The district court did not review any of the documents at issue in this case, nor require a Vaughn index. Instead, it relied on *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) for the premise that agency affidavits are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* at 1200. The district court then rendered its decision entirely on the IRS's affidavits, some of which were submitted *in camera* and could not be challenged by the Foundation. However, the reliance on affidavits in *SafeCard* only extended to determining whether the agency had performed an adequate search for documents pursuant to a FOIA request. *See id.* This Court's subsequent examination of whether the documents in *SafeCard* qualified for the specific exemptions relied upon a Vaughn index provided by the agency. *See id.* at 1202-06. No such index was ordered or provided in this case.

This Court has repeatedly rejected the premise that an agency could meet its burden through "conclusory assertion[s] that material is exempt and nonsegrable [sic][,]" *Campbell v. Dept. of Justice*, 164 F.3d 20, 31 (D.C. Cir. 1998), yet the IRS's affidavits in this case were precisely that. For example, the district court

14

relied on the affidavit of Carlton W. King, an attorney with the IRS, to hold that

certain withheld documents qualified for an exemption under 5 U.S.C. § 552(b)(5),

when Mr. King described the documents at issue as "a Routing and Transmittal

Slip" from an IRS attorney to an IRS agent "which is attached to a draft of a Form

886A, Explanation of Items, relating to the Service's examination of [the

Foundation's] tax exempt status." Appendix at 36. Mr. King further stated that the

"draft Form 886A reflects extensive edits and comments by attorneys" at the IRS,

and then concludes that "[t]hese comments are legal advice from Counsel to its

client[.]" *Id.* This is all entirely conclusory. The description of the information

contained on these documents is so broad that it means almost anything, couched

in language appropriate for a discovery *request* as opposed to an answer. The claim

that the documents reflect "extensive edits and comments by attorneys" is similarly

conclusory, in that there is no basis by which to judge what "extensive" means, or

whether any segregable material was still contained therein, such as "purely

factual" material that would otherwise have to be disclosed. *Playboy Enterprises,*

*Inc. v. Dept. of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982).

     Mr. King's assertion that the information sought "constitutes predecisional,

deliberative material" subject to exemption, Appendix at 37, was mere

"boilerplate" language insufficient to carry the IRS's burden. *Campbell*, 164 F.3d

at 31 n.10. Just in regard to the "predecisional" claim, the IRS never once

presented any information as to when the allegedly exempt material was created, in comparison to when any decision had been made by the IRS as to the Foundation's tax exempt status. In essence, the IRS calls the information predecisional because it says it was, not because it showed that the information was created prior in time to the actual decision. That is the epitome of a conclusory statement.

Mr. King also stated that four pages were subject to exemption under 5 U.S.C. § 552(b)(3) because they "consist of parts of the actual returns of taxpayers other than [the Foundation]" and thus protected under 26 U.S.C. § 6103(a). Appendix at 35. This is conclusory because there was no mention of whether any waiver had been executed by the taxpayers in question under 26 U.S.C. § 6103(c), nor any indication of what "parts" of the tax returns these documents were—schedules, 1099s, or other addenda. Mr. King's statement is more "boilerplate," and that is insufficient to meet the IRS's burden. *Campbell*, 164 F.3d at 31 n.10. Revealingly, the other affidavit publicly submitted by the IRS, that of Stephen Danish, contains no descriptions or analysis of the documents whatsoever. Appendix at 44-46.

The deficiencies in the IRS's affidavits made it impossible for the district court, or this Court, to engage in a proper segregability analysis. At a minimum, the IRS must "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data*

*Central, Inc.*, 566 F.2d at 261. There needs to be a "detailed justification for an

agency decision that non-exempt material is not segregable" in order for the

agency to meet its burden. *Id.* Here, the IRS failed to provide *any* such

information.

Nevertheless, the district court erroneously accepted the IRS's insufficient

and conclusory representations at face value, giving deference to the IRS that was

not warranted. The district court had an obligation to compel the IRS to provide a

proper record describing the documents in question and the information thereon so

as to "supply the courts with sufficient information to allow [this Court] to make a

reasoned determination that [the agency was] correct." *Coastal States Gas Corp.*,

617 F.2d at 861. As it is, this Court has practically no substantive information at all

upon which to "conduct its own investigation into the document[s]." *Vaughn*, 484

F.2d at 825. Given these deficiencies, and the small number of documents at issue,

*in camera* review of the documents is "plainly necessary." *Allen*, 636 F.2d at

1299.[4] This Court should reverse the district court's rulings and remand for a

proper review of the Withheld Documents.

---

[4] Any argument by the IRS that further disclosure in its affidavits "would result in disclosure of the information sought to be protected" only further buttresses the necessity of *in camera* inspection of the documents. *Allen*, 636 F.2d at 1299.

17

**IV.    The District Court Erred In Relying On The IRS's *In Camera* Affidavits Instead of Reviewing The Withheld Documents *In Camera* To Determine Whether Any Segregable Information Should Be Produced In Response To The Foundation's FOIA Request.**

It was also improper for the district court to award summary judgment on the basis of IRS affidavits submitted *in camera*, thus insulating the assertions therein from any meaningful scrutiny by the Foundation, when the information sought in the Foundation's FOIA request had nothing to do with national security.

As noted in Section II, *supra*, this Court has ruled that FOIA requests related to matters of national security tend to lend themselves toward resolution through the use of "affidavits [submitted] in camera rather than in public." *Hayden*, 608 F.2d at 1385. However, in the typical FOIA case, "a trial court should not use *in camera* affidavits unless necessary and, if such affidavits are used, it should be certain to make the public record as complete as possible." *Lykins v. Dept. of Justice*, 725 F.2d 1455, 1465 (D.C. Cir. 1984). In fact, the situation in *Lykins* is rather similar to the one faced by the Foundation, in that the FOIA plaintiff was given so little information that it deprived the judiciary of an effective adversary system—no Vaughn index, no discussion of segregability, no effort to make public as much information as possible, etc. *Id.*

"[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their

18

conclusions in order that they may be challenged *by FOIA plaintiffs* and reviewed by the courts." *Mead Data Central, Inc.*, 566 F.2d at 261 (emphasis added). The IRS evaded that scrutiny with regard to its claim of exemptions under 5 U.S.C. § 552(b)(3) and (b)(7)(D) by the submission of declarations *in camera* to the district court. Although it is understandable that the IRS would not want to make public certain information about a confidential informant, it is incredible to assert that there was *no information whatsoever* that could have been made public. In *Lykins*, this Court noted that the name of the author of a psychological report that was described in an affidavit submitted *in camera* was "segregable" and should have been made public. 725 F.2d at 1465 n.11. The same considerations should have been applied here by the district court, but were not.

The very purpose of FOIA is to foster trust in the federal government through a policy of openness. The IRS's use of *in camera* declarations where no issues of national security were implicated runs diametrically against that purpose. The district court should not have relied on the IRS's *in camera* declarations, or should have at least made public portions of those declarations as were reasonably segregable, so as to allow the Foundation the ability to test the IRS's claims of exemption. This Court should reverse the district court's grant of summary judgment and remand for a proper review.

## CONCLUSION

For the above-stated reasons, Appellant Life Extension Foundation, Inc. respectfully requests that this Court reverse the Order of the district court granting summary judgment to Appellee Internal Revenue Service and denying summary judgment to the Foundation, and remand the matter to the district court for a proper development of the record, including *in camera* review of the Withheld Documents with participation by the Foundation's counsel, along with any other proceedings necessary to comply with the ruling of this Court.

Respectfully submitted,

LIFE EXTENSION FOUNDATION, INC.
By counsel:

*/s/ Nancy O. Kuhn*
Nancy O. Kuhn (#54673)
nkuhn@jackscamp.com
JACKSON & CAMPBELL, P.C.
1120 Twentieth Street, N.W.
South Tower, Third Floor
Washington, D.C. 20036-3437
Tel: (202) 457-1600
Fax: (202) 457-1678

*/s/ James N. Markels*
James N. Markels (#54651)
jmarkels@jackscamp.com

2530725v.1

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

        [ X ] this brief contains [*4,204*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

        [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

        [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: September 16, 2013            /s/ Nancy O. Kuhn

                                      /s/ James N. Markels

                                      *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 16th day of September, 2013, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

>       Gretchen M. Wolfinger, Esquire
>       Appellate Section, Tax Division
>       U.S. Department of Justice
>       Post Office Box 502
>       Washington, D.C. 20044
>       Telephone: (202) 616-7611
>       Facsimile: (202) 514-8456
>       Email: gretchen.m.wolfinger@usdoj.com
>       *Counsel for Appellee Internal Revenue Service*

I further certify that on this 16th day of September, 2013, I caused the required copies of the Brief of Appellant to be hand filed with the Clerk of the Court.

/s/ Nancy O. Kuhn

/s/ James N. Markels

*Counsel for Appellant*

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

5 U.S.C. § 552 …..………………………………………………………… 1

26 U.S.C. § 6103 ………………..……………………………………… 19

28 U.S.C. § 1291 ……………….…………………………………………. 74

28 U.S.C. § 1331...…... …………………………………………….. 74

5 U.S.C. § 552. Public information; agency rules, opinions, orders, records, and proceedings

**(a)** Each agency shall make available to the public information as follows:

**(1)** Each agency shall separately state and currently publish in the Federal Register for the guidance of the public--

**(A)** descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

**(B)** statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

**(C)** rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

**(D)** substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

**(E)** each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

**(2)** Each agency, in accordance with published rules, shall make available for public inspection and copying--

**(A)** final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

**(B)** those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

**(C)** administrative staff manuals and instructions to staff that affect a member of the public;

**(D)** copies of all records, regardless of form or format, which have been released to any person under paragraph (3) and which, because of the nature of their subject matter, the agency determines have

become or are likely to become the subject of subsequent requests for substantially the same records; and

**(E)** a general index of the records referred to under subparagraph (D); unless the materials are promptly published and copies offered for sale. For records created on or after November 1, 1996, within one year after such date, each agency shall make such records available, including by computer telecommunications or, if computer telecommunications means have not been established by the agency, by other electronic means. To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, staff manual, instruction, or copies of records referred to in subparagraph (D). However, in each case the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the exemption in subsection (b) under which the deletion is made. If technically feasible, the extent of the deletion shall be indicated at the place in the record where the deletion was made. Each agency shall also maintain and make available for public inspection and copying current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published. Each agency shall promptly publish, quarterly or more frequently, and distribute (by sale or otherwise) copies of each index or supplements thereto unless it determines by order published in the Federal Register that the publication would be unnecessary and impracticable, in which case the agency shall nonetheless provide copies of such index on request at a cost not to exceed the direct cost of duplication. Each agency shall make the index referred to in subparagraph (E) available by computer telecommunications by December 31, 1999. A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if--

  **(i)** it has been indexed and either made available or published as provided by this paragraph; or

  **(ii)** the party has actual and timely notice of the terms thereof.

**(3)**   **(A)** Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in

subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

**(B)** In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format. Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section.

**(C)** In responding under this paragraph to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system.

**(D)** For purposes of this paragraph, the term "search" means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request.

**(E)** An agency, or part of an agency, that is an element of the intelligence community (as that term is defined in section 3(4) of the National Security Act of 1947 (50 U.S.C. 401a(4))) shall not make any record available under this paragraph to--

> **(i)** any government entity, other than a State, territory, commonwealth, or district of the United States, or any subdivision thereof; or
>
> **(ii)** a representative of a government entity described in clause (i).

**(4)** **(A)** **(i)** In order to carry out the provisions of this section, each agency shall promulgate regulations, pursuant to notice and receipt of public comment, specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced. Such schedule shall conform to the guidelines which shall be promulgated, pursuant to notice and receipt of public comment, by the Director of the Office of Management and Budget and which shall provide for a uniform schedule of fees for all agencies.

**(ii)** Such agency regulations shall provide that--

3

> **(I)** fees shall be limited to reasonable standard charges for document search, duplication, and review, when records are requested for commercial use;
> **(II)** fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research; or a representative of the news media; and
> **(III)** for any request not described in (I) or (II), fees shall be limited to reasonable standard charges for document search and duplication.

In this clause, the term "a representative of the news media" means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. In this clause, the term "news" means information that is about current events or that would be of current interest to the public. Examples of news-media entities are television or radio stations broadcasting to the public at large and publishers of periodicals (but only if such entities qualify as disseminators of "news") who make their products available for purchase by or subscription by or free distribution to the general public. These examples are not all-inclusive. Moreover, as methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), such alternative media shall be considered to be news-media entities. A freelance journalist shall be regarded as working for a news-media entity if the journalist can demonstrate a solid basis for expecting publication through that entity, whether or not the journalist is actually employed by the entity. A publication contract would present a solid basis for such an expectation; the Government may also consider the past publication record of the requester in making such a determination.

**(iii)** Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of

4

the operations or activities of the government and is not primarily in the commercial interest of the requester.

**(iv)** Fee schedules shall provide for the recovery of only the direct costs of search, duplication, or review. Review costs shall include only the direct costs incurred during the initial examination of a document for the purposes of determining whether the documents must be disclosed under this section and for the purposes of withholding any portions exempt from disclosure under this section. Review costs may not include any costs incurred in resolving issues of law or policy that may be raised in the course of processing a request under this section. No fee may be charged by any agency under this section--

> **(I)** if the costs of routine collection and processing of the fee are likely to equal or exceed the amount of the fee; or
> **(II)** for any request described in clause (ii)(II) or (III) of this subparagraph for the first two hours of search time or for the first one hundred pages of duplication.

**(v)** No agency may require advance payment of any fee unless the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250.

**(vi)** Nothing in this subparagraph shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records.

**(vii)** In any action by a requester regarding the waiver of fees under this section, the court shall determine the matter de novo: *Provided*, That the court's review of the matter shall be limited to the record before the agency.

**(viii)** An agency shall not assess search fees (or in the case of a requester described under clause (ii)(II), duplication fees) under this subparagraph if the agency fails to comply with any time limit under paragraph (6), if no unusual or exceptional circumstances (as those terms are defined for purposes of paragraphs (6)(B) and (C), respectively) apply to the processing of the request.

**(B)** On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records

improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

**(C)** Notwithstanding any other provision of law, the defendant shall serve an answer or otherwise plead to any complaint made under this subsection within thirty days after service upon the defendant of the pleading in which such complaint is made, unless the court otherwise directs for good cause shown.

[**(D)** Repealed. Pub.L. 98-620, Title IV, § 402(2), Nov. 8, 1984, 98 Stat. 3357]

**(E)**   **(i)** The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

**(ii)** For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either--

**(I)** a judicial order, or an enforceable written agreement or consent decree; or

**(II)** a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

**(F)**   **(i)** Whenever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding. The Special Counsel, after investigation and consideration of the evidence submitted, shall submit his

6

findings and recommendations to the administrative authority of the agency concerned and shall send copies of the findings and recommendations to the officer or employee or his representative. The administrative authority shall take the corrective action that the Special Counsel recommends.

**(ii)** The Attorney General shall--

> **(I)** notify the Special Counsel of each civil action described under the first sentence of clause (i); and
> **(II)** annually submit a report to Congress on the number of such civil actions in the preceding year.

**(iii)** The Special Counsel shall annually submit a report to Congress on the actions taken by the Special Counsel under clause (i).

**(G)** In the event of noncompliance with the order of the court, the district court may punish for contempt the responsible employee, and in the case of a uniformed service, the responsible member.

**(5)** Each agency having more than one member shall maintain and make available for public inspection a record of the final votes of each member in every agency proceeding.

**(6)**   **(A)** Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall--

> **(i)** determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and
> **(ii)** make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

The 20-day period under clause (i) shall commence on the date on which the request is first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the agency that is designated in the agency's regulations under this

7

section to receive requests under this section. The 20-day period shall not be tolled by the agency except--

> **(I)** that the agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester under this section; or
> **(II)** if necessary to clarify with the requester issues regarding fee assessment. In either case, the agency's receipt of the requester's response to the agency's request for information or clarification ends the tolling period.

**(B)**  **(i)** In unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (i) or clause (ii) of subparagraph (A) may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days, except as provided in clause (ii) of this subparagraph.

**(ii)** With respect to a request for which a written notice under clause (i) extends the time limits prescribed under clause (i) of subparagraph (A), the agency shall notify the person making the request if the request cannot be processed within the time limit specified in that clause and shall provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request. To aid the requester, each agency shall make available its FOIA Public Liaison, who shall assist in the resolution of any disputes between the requester and the agency. Refusal by the person to reasonably modify the request or arrange such an alternative time frame shall be considered as a factor in determining whether exceptional circumstances exist for purposes of subparagraph (C).

**(iii)** As used in this subparagraph, "unusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular requests--

> **(I)** the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;

**(II)** the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or **(III)** the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

**(iv)** Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for the aggregation of certain requests by the same requestor, or by a group of requestors acting in concert, if the agency reasonably believes that such requests actually constitute a single request, which would otherwise satisfy the unusual circumstances specified in this subparagraph, and the requests involve clearly related matters. Multiple requests involving unrelated matters shall not be aggregated.

**(C)** **(i)** Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request. Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of such request.

**(ii)** For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

**(iii)** Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) under clause (ii) after being

9

given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

**(D)**    **(i)** Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for multitrack processing of requests for records based on the amount of work or time (or both) involved in processing requests.

**(ii)** Regulations under this subparagraph may provide a person making a request that does not qualify for the fastest multitrack processing an opportunity to limit the scope of the request in order to qualify for faster processing.

**(iii)** This subparagraph shall not be considered to affect the requirement under subparagraph (C) to exercise due diligence.

**(E)**    **(i)** Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records--

> **(I)** in cases in which the person requesting the records demonstrates a compelling need; and
>
> **(II)** in other cases determined by the agency.

**(ii)** Notwithstanding clause (i), regulations under this subparagraph must ensure--

> **(I)** that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request; and
>
> **(II)** expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing.

**(iii)** An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing under this subparagraph. Agency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review under paragraph (4), except that the judicial review shall be based on the record before the agency at the time of the determination.

**(iv)** A district court of the United States shall not have jurisdiction to review an agency denial of expedited processing

of a request for records after the agency has provided a complete response to the request.

(**v**) For purposes of this subparagraph, the term "compelling need" means--

(**I**) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

(**II**) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

(**vi**) A demonstration of a compelling need by a person making a request for expedited processing shall be made by a statement certified by such person to be true and correct to the best of such person's knowledge and belief.

(**F**) In denying a request for records, in whole or in part, an agency shall make a reasonable effort to estimate the volume of any requested matter the provision of which is denied, and shall provide any such estimate to the person making the request, unless providing such estimate would harm an interest protected by the exemption in subsection (b) pursuant to which the denial is made.

(**7**) Each agency shall--

(**A**) establish a system to assign an individualized tracking number for each request received that will take longer than ten days to process and provide to each person making a request the tracking number assigned to the request; and

(**B**) establish a telephone line or Internet service that provides information about the status of a request to the person making the request using the assigned tracking number, including--

(**i**) the date on which the agency originally received the request; and

(**ii**) an estimated date on which the agency will complete action on the request.

(**b**) This section does not apply to matters that are--

(**1**) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(**2**) related solely to the internal personnel rules and practices of an agency;

11

(**3**) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute--

    (**A**)   (**i**) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

           (**ii**) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

    (**B**) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

(**4**) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(**5**) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(**6**) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(**7**) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

(**8**) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(**9**) geological and geophysical information and data, including maps, concerning wells.

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this

subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.

**(c)** **(1)** Whenever a request is made which involves access to records described in subsection (b)(7)(A) and--

      **(A)** the investigation or proceeding involves a possible violation of criminal law; and

      **(B)** there is reason to believe that (i) the subject of the investigation or proceeding is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings,

the agency may, during only such time as that circumstance continues, treat the records as not subject to the requirements of this section.

**(2)** Whenever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed.

**(3)** Whenever a request is made which involves access to records maintained by the Federal Bureau of Investigation pertaining to foreign intelligence or counterintelligence, or international terrorism, and the existence of the records is classified information as provided in subsection (b)(1), the Bureau may, as long as the existence of the records remains classified information, treat the records as not subject to the requirements of this section.

**(d)** This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. This section is not authority to withhold information from Congress.

**(e)** **(1)** On or before February 1 of each year, each agency shall submit to the Attorney General of the United States a report which shall cover the preceding fiscal year and which shall include--

      **(A)** the number of determinations made by the agency not to comply with requests for records made to such agency under subsection (a) and the reasons for each such determination;

      **(B)** **(i)** the number of appeals made by persons under subsection (a)(6), the result of such appeals, and the reason for the action upon each appeal that results in a denial of information; and

(ii) a complete list of all statutes that the agency relies upon to authorize the agency to withhold information under subsection (b)(3), the number of occasions on which each statute was relied upon, a description of whether a court has upheld the decision of the agency to withhold information under each such statute, and a concise description of the scope of any information withheld;

(C) the number of requests for records pending before the agency as of September 30 of the preceding year, and the median and average number of days that such requests had been pending before the agency as of that date;

(D) the number of requests for records received by the agency and the number of requests which the agency processed;

(E) the median number of days taken by the agency to process different types of requests, based on the date on which the requests were received by the agency;

(F) the average number of days for the agency to respond to a request beginning on the date on which the request was received by the agency, the median number of days for the agency to respond to such requests, and the range in number of days for the agency to respond to such requests;

(G) based on the number of business days that have elapsed since each request was originally received by the agency--

(i) the number of requests for records to which the agency has responded with a determination within a period up to and including 20 days, and in 20-day increments up to and including 200 days;

(ii) the number of requests for records to which the agency has responded with a determination within a period greater than 200 days and less than 301 days;

(iii) the number of requests for records to which the agency has responded with a determination within a period greater than 300 days and less than 401 days; and

(iv) the number of requests for records to which the agency has responded with a determination within a period greater than 400 days;

(H) the average number of days for the agency to provide the granted information beginning on the date on which the request was originally filed, the median number of days for the agency to provide the granted

information, and the range in number of days for the agency to provide the granted information;

**(I)** the median and average number of days for the agency to respond to administrative appeals based on the date on which the appeals originally were received by the agency, the highest number of business days taken by the agency to respond to an administrative appeal, and the lowest number of business days taken by the agency to respond to an administrative appeal;

**(J)** data on the 10 active requests with the earliest filing dates pending at each agency, including the amount of time that has elapsed since each request was originally received by the agency;

**(K)** data on the 10 active administrative appeals with the earliest filing dates pending before the agency as of September 30 of the preceding year, including the number of business days that have elapsed since the requests were originally received by the agency;

**(L)** the number of expedited review requests that are granted and denied, the average and median number of days for adjudicating expedited review requests, and the number adjudicated within the required 10 days;

**(M)** the number of fee waiver requests that are granted and denied, and the average and median number of days for adjudicating fee waiver determinations;

**(N)** the total amount of fees collected by the agency for processing requests; and

**(O)** the number of full-time staff of the agency devoted to processing requests for records under this section, and the total amount expended by the agency for processing such requests.

**(2)** Information in each report submitted under paragraph (1) shall be expressed in terms of each principal component of the agency and for the agency overall.

**(3)** Each agency shall make each such report available to the public including by computer telecommunications, or if computer telecommunications means have not been established by the agency, by other electronic means. In addition, each agency shall make the raw statistical data used in its reports available electronically to the public upon request.

**(4)** The Attorney General of the United States shall make each report which has been made available by electronic means available at a single electronic access point. The Attorney General of the United States shall notify the Chairman and ranking minority member of the Committee on Government

Reform and Oversight of the House of Representatives and the Chairman and ranking minority member of the Committees on Governmental Affairs and the Judiciary of the Senate, no later than April 1 of the year in which each such report is issued, that such reports are available by electronic means.

**(5)** The Attorney General of the United States, in consultation with the Director of the Office of Management and Budget, shall develop reporting and performance guidelines in connection with reports required by this subsection by October 1, 1997, and may establish additional requirements for such reports as the Attorney General determines may be useful.

**(6)** The Attorney General of the United States shall submit an annual report on or before April 1 of each calendar year which shall include for the prior calendar year a listing of the number of cases arising under this section, the exemption involved in each case, the disposition of such case, and the cost, fees, and penalties assessed under subparagraphs (E), (F), and (G) of subsection (a)(4). Such report shall also include a description of the efforts undertaken by the Department of Justice to encourage agency compliance with this section.

**(f)** For purposes of this section, the term--

**(1)** "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency; and

**(2)** "record" and any other term used in this section in reference to information includes--

**(A)** any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format; and

**(B)** any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management.

**(g)** The head of each agency shall prepare and make publicly available upon request, reference material or a guide for requesting records or information from the agency, subject to the exemptions in subsection (b), including--

**(1)** an index of all major information systems of the agency;

**(2)** a description of major information and record locator systems maintained by the agency; and

**(3)** a handbook for obtaining various types and categories of public information from the agency pursuant to chapter 35 of title 44, and under this section.

**(h)**   **(1)** There is established the Office of Government Information Services within the National Archives and Records Administration.

**(2)** The Office of Government Information Services shall--

**(A)** review policies and procedures of administrative agencies under this section;

**(B)** review compliance with this section by administrative agencies; and

**(C)** recommend policy changes to Congress and the President to improve the administration of this section.

**(3)** The Office of Government Information Services shall offer mediation services to resolve disputes between persons making requests under this section and administrative agencies as a non-exclusive alternative to litigation and, at the discretion of the Office, may issue advisory opinions if mediation has not resolved the dispute.

**(i)** The Government Accountability Office shall conduct audits of administrative agencies on the implementation of this section and issue reports detailing the results of such audits.

**(j)** Each agency shall designate a Chief FOIA Officer who shall be a senior official of such agency (at the Assistant Secretary or equivalent level).

**(k)** The Chief FOIA Officer of each agency shall, subject to the authority of the head of the agency--

**(1)** have agency-wide responsibility for efficient and appropriate compliance with this section;

**(2)** monitor implementation of this section throughout the agency and keep the head of the agency, the chief legal officer of the agency, and the Attorney General appropriately informed of the agency's performance in implementing this section;

**(3)** recommend to the head of the agency such adjustments to agency practices, policies, personnel, and funding as may be necessary to improve its implementation of this section;

**(4)** review and report to the Attorney General, through the head of the agency, at such times and in such formats as the Attorney General may direct, on the agency's performance in implementing this section;

**(5)** facilitate public understanding of the purposes of the statutory exemptions of this section by including concise descriptions of the exemptions in both the agency's handbook issued under subsection (g), and the agency's annual report on this section, and by providing an overview,

17

where appropriate, of certain general categories of agency records to which those exemptions apply; and

**(6)** designate one or more FOIA Public Liaisons.

**(l)** FOIA Public Liaisons shall report to the agency Chief FOIA Officer and shall serve as supervisory officials to whom a requester under this section can raise concerns about the service the requester has received from the FOIA Requester Center, following an initial response from the FOIA Requester Center Staff. FOIA Public Liaisons shall be responsible for assisting in reducing delays, increasing transparency and understanding of the status of requests, and assisting in the resolution of disputes.

26 U.S.C. § 6103. Confidentiality and disclosure of returns and return information

**(a) General rule.**--Returns and return information shall be confidential, and except as authorized by this title--

**(1)** no officer or employee of the United States,

**(2)** no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c), and

**(3)** no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii), subsection (k)(10), paragraph (6), (10), (12), (16), (19), (20), or (21) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n),shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

**(b) Definitions.**--For purposes of this section--

**(1) Return.**--The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

**(2) Return information.**--The term "return information" means--

**(A)** a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,

**(B)** any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,

19

**(C)** any advance pricing agreement entered into by a taxpayer and the Secretary and any background information related to such agreement or any application for an advance pricing agreement, and

**(D)** any agreement under section 7121, and any similar agreement, and any background information related to such an agreement or request for such an agreement,but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. Nothing in the preceding sentence, or in any other provision of law, shall be construed to require the disclosure of standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards, if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws.

**(3) Taxpayer return information.**--The term "taxpayer return information" means return information as defined in paragraph (2) which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates.

**(4) Tax administration.**--The term "tax administration"--

**(A)** means--

**(i)** the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and

**(ii)** the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and

**(B)** includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

**(5) State.**--

**(A) In general.**--The term "State" means--

**(i)** any of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands,

**(ii)** for purposes of subsections (a)(2), (b)(4), (d)(1), (h)(4), and (p), any municipality--

20

**(I)** with a population in excess of 250,000 (as determined under the most recent decennial United States census data available),

**(II)** which imposes a tax on income or wages, and

**(III)** with which the Secretary (in his sole discretion) has entered into an agreement regarding disclosure, and

**(iii)** for purposes of subsections (a)(2), (b)(4), (d)(1), (h)(4), and (p), any governmental entity--

**(I)** which is formed and operated by a qualified group of municipalities, and

**(II)** with which the Secretary (in his sole discretion) has entered into an agreement regarding disclosure.

**(B) Regional income tax agencies.**--For purposes of subparagraph (A)(iii)--

**(i) Qualified group of municipalities.**--The term "qualified group of municipalities" means, with respect to any governmental entity, 2 or more municipalities--

**(I)** each of which imposes a tax on income or wages,

**(II)** each of which, under the authority of a State statute, administers the laws relating to the imposition of such taxes through such entity, and

**(III)** which collectively have a population in excess of 250,000 (as determined under the most recent decennial United States census data available).

**(ii) References to State law, etc.**--For purposes of applying subparagraph (A)(iii) to the subsections referred to in such subparagraph, any reference in such subsections to State law, proceedings, or tax returns shall be treated as references to the law, proceedings, or tax returns, as the case may be, of the municipalities which form and operate the governmental entity referred to in such subparagraph.

**(iii) Disclosure to contractors and other agents.**-- Notwithstanding any other provision of this section, no return or return information shall be disclosed to any contractor or other agent of a governmental entity referred to in subparagraph (A)(iii) unless such entity, to the satisfaction of the Secretary--

**(I)** has requirements in effect which require each such contractor or other agent which would have access to returns or return information to provide safeguards

21

(within the meaning of subsection (p)(4)) to protect the confidentiality of such returns or return information,
**(II)** agrees to conduct an on-site review every 3 years (or a mid-point review in the case of contracts or agreements of less than 3 years in duration) of each contractor or other agent to determine compliance with such requirements,
**(III)** submits the findings of the most recent review conducted under subclause (II) to the Secretary as part of the report required by subsection (p)(4)(E), and
**(IV)** certifies to the Secretary for the most recent annual period that such contractor or other agent is in compliance with all such requirements.

The certification required by subclause (IV) shall include the name and address of each contractor and other agent, a description of the contract or agreement with such contractor or other agent, and the duration of such contract or agreement. The requirements of this clause shall not apply to disclosures pursuant to subsection (n) for purposes of Federal tax administration and a rule similar to the rule of subsection (p)(8)(B) shall apply for purposes of this clause.

**(6) Taxpayer identity.**--The term "taxpayer identity" means the name of a person with respect to whom a return is filed, his mailing address, his taxpayer identifying number (as described in section 6109), or a combination thereof.

**(7) Inspection.**--The terms "inspected" and "inspection" mean any examination of a return or return information.

**(8) Disclosure.**--The term "disclosure" means the making known to any person in any manner whatever a return or return information.

**(9) Federal agency.**--The term "Federal agency" means an agency within the meaning ofsection 551(1) of title 5, United States Code.

**(10) Chief executive officer.**--The term "chief executive officer" means, with respect to any municipality, any elected official and the chief official (even if not elected) of such municipality.

**(11) Terrorist incident, threat, or activity.**--The term "terrorist incident, threat, or activity" means an incident, threat, or activity involving an act of domestic terrorism (as defined in section 2331(5) of title 18, United States Code) or international terrorism (as defined in section 2331(1) of such title).

**(c) Disclosure of returns and return information to designee of taxpayer.**--The Secretary may, subject to such requirements and conditions as he may prescribe by

22

regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a request for or consent to such disclosure, or to any other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person. However, return information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration.

**(d) Disclosure to State tax officials and State and local law enforcement agencies.--**

**(1) In general.**--Returns and return information with respect to taxes imposed by chapters 1, 2, 6, 11, 12, 21, 23, 24, 31, 32, 44, 51, and 52 and subchapter D of chapter 36 shall be open to inspection by, or disclosure to, any State agency, body, or commission, or its legal representative, which is charged under the laws of such State with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws, including any procedures with respect to locating any person who may be entitled to a refund. Such inspection shall be permitted, or such disclosure made, only upon written request by the head of such agency, body, or commission, and only to the representatives of such agency, body, or commission designated in such written request as the individuals who are to inspect or to receive the returns or return information on behalf of such agency, body, or commission. Such representatives shall not include any individual who is the chief executive officer of such State or who is neither an employee or legal representative of such agency, body, or commission nor a person described in subsection (n). However, such return information shall not be disclosed to the extent that the Secretary determines that such disclosure would identify a confidential informant or seriously impair any civil or criminal tax investigation.

**(2) Disclosure to State audit agencies.--**

**(A) In general.**--Any returns or return information obtained under paragraph (1) by any State agency, body, or commission may be open to inspection by, or disclosure to, officers and employees of the State audit agency for the purpose of, and only to the extent necessary in, making an audit of the State agency, body, or commission referred to in paragraph (1).

**(B) State audit agency.**--For purposes of subparagraph (A), the term "State audit agency" means any State agency, body, or commission which is charged under the laws of the State with the responsibility of auditing State revenues and programs.

23

**(3) Exception for reimbursement under section 7624.**--Nothing in this section shall be construed to prevent the Secretary from disclosing to any State or local law enforcement agency which may receive a payment under section 7624 the amount of the recovered taxes with respect to which such a payment may be made.

**(4) Availability and use of death information.--**

    **(A) In general.**--No returns or return information may be disclosed under paragraph (1) to any agency, body, or commission of any State (or any legal representative thereof) during any period during which a contract meeting the requirements of subparagraph (B) is not in effect between such State and the Secretary of Health and Human Services.

    **(B) Contractual requirements.**--A contract meets the requirements of this subparagraph if--

        **(i)** such contract requires the State to furnish the Secretary of Health and Human Services information concerning individuals with respect to whom death certificates (or equivalent documents maintained by the State or any subdivision thereof) have been officially filed with it, and

        **(ii)** such contract does not include any restriction on the use of information obtained by such Secretary pursuant to such contract, except that such contract may provide that such information is only to be used by the Secretary (or any other Federal agency) for purposes of ensuring that Federal benefits or other payments are not erroneously paid to deceased individuals.

    Any information obtained by the Secretary of Health and Human Services under such a contract shall be exempt from disclosure under section 552 of title 5, United States Code, and from the requirements of section 552a of such title 5.

    **(C) Special exception.**--The provisions of subparagraph (A) shall not apply to any State which on July 1, 1993, was not, pursuant to a contract, furnishing the Secretary of Health and Human Services information concerning individuals with respect to whom death certificates (or equivalent documents maintained by the State or any subdivision thereof) have been officially filed with it.

**(5) Disclosure for combined employment tax reporting.--**

    **(A) In general.**--The Secretary may disclose taxpayer identity information and signatures to any agency, body, or commission of any State for the purpose of carrying out with such agency, body, or commission a combined Federal and State employment tax reporting

program approved by the Secretary. Subsections (a)(2) and (p)(4) and sections 7213and 7213A shall not apply with respect to disclosures or inspections made pursuant to this paragraph.

**(B) Termination.**--The Secretary may not make any disclosure under this paragraph after December 31, 2007.

**(6) Limitation on disclosure regarding regional income tax agencies treated as States.**--For purposes of paragraph (1), inspection by or disclosure to an entity described in subsection (b)(5)(A)(iii) shall be for the purpose of, and only to the extent necessary in, the administration of the laws of the member municipalities in such entity relating to the imposition of a tax on income or wages. Such entity may not redisclose any return or return information received pursuant to paragraph (1) to any such member municipality.

**(e) Disclosure to persons having material interest.**--

**(1) In general.**--The return of a person shall, upon written request, be open to inspection by or disclosure to--

(A) in the case of the return of an individual--

(i) that individual,

(ii) the spouse of that individual if the individual and such spouse have signified their consent to consider a gift reported on such return as made one-half by him and one-half by the spouse pursuant to the provisions of section 2513; or

(iii) the child of that individual (or such child's legal representative) to the extent necessary to comply with the provisions of section 1(g);

(B) in the case of an income tax return filed jointly, either of the individuals with respect to whom the return is filed;

(C) in the case of the return of a partnership, any person who was a member of such partnership during any part of the period covered by the return;

(D) in the case of the return of a corporation or a subsidiary thereof--

(i) any person designated by resolution of its board of directors or other similar governing body,

(ii) any officer or employee of such corporation upon written request signed by any principal officer and attested to by the secretary or other officer,

(iii) any bona fide shareholder of record owning 1 percent or more of the outstanding stock of such corporation,

(iv) if the corporation was an S corporation, any person who was a shareholder during any part of the period covered by such

25

return during which an election under section 1362(a) was in effect, or

**(v)** if the corporation has been dissolved, any person authorized by applicable State law to act for the corporation or any person who the Secretary finds to have a material interest which will be affected by information contained therein;

**(E)** in the case of the return of an estate--

**(i)** the administrator, executor, or trustee of such estate, and

**(ii)** any heir at law, next of kin, or beneficiary under the will, of the decedent, but only if the Secretary finds that such heir at law, next of kin, or beneficiary has a material interest which will be affected by information contained therein; and

**(F)** in the case of the return of a trust--

**(i)** the trustee or trustees, jointly or separately, and

**(ii)** any beneficiary of such trust, but only if the Secretary finds that such beneficiary has a material interest which will be affected by information contained therein.

**(2) Incompetency.**--If an individual described in paragraph (1) is legally incompetent, the applicable return shall, upon written request, be open to inspection by or disclosure to the committee, trustee, or guardian of his estate.

**(3) Deceased individuals.**--The return of a decedent shall, upon written request, be open to inspection by or disclosure to--

**(A)** the administrator, executor, or trustee of his estate, and

**(B)** any heir at law, next of kin, or beneficiary under the will, of such decedent, or a donee of property, but only if the Secretary finds that such heir at law, next of kin, beneficiary, or donee has a material interest which will be affected by information contained therein.

**(4) Title 11 cases and receivership proceedings.**--If--

**(A)** there is a trustee in a title 11 case in which the debtor is the person with respect to whom the return is filed, or

**(B)** substantially all of the property of the person with respect to whom the return is filed is in the hands of a receiver,

such return or returns for prior years of such person shall, upon written request, be open to inspection by or disclosure to such trustee or receiver, but only if the Secretary finds that such trustee or receiver, in his fiduciary capacity, has a material interest which will be affected by information contained therein.

**(5) Individual's title 11 case.**--

    **(A) In general.**--In any case to which section 1398 applies (determined without regard to section 1398(b)(1)), any return of the debtor for the taxable year in which the case commenced or any preceding taxable year shall, upon written request, be open to inspection by or disclosure to the trustee in such case.

    **(B) Return of estate available to debtor.**--Any return of an estate in a case to which section 1398 applies shall, upon written request, be open to inspection by or disclosure to the debtor in such case.

    **(C) Special rule for involuntary cases.**--In an involuntary case, no disclosure shall be made under subparagraph (A) until the order for relief has been entered by the court having jurisdiction of such case unless such court finds that such disclosure is appropriate for purposes of determining whether an order for relief should be entered.

**(6) Attorney in fact.**--Any return to which this subsection applies shall, upon written request, also be open to inspection by or disclosure to the attorney in fact duly authorized in writing by any of the persons described in paragraph (1), (2), (3), (4), (5), (8), or (9) to inspect the return or receive the information on his behalf, subject to the conditions provided in such paragraphs.

**(7) Return information.**--Return information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines that such disclosure would not seriously impair Federal tax administration.

**(8) Disclosure of collection activities with respect to joint return.**--If any deficiency of tax with respect to a joint return is assessed and the individuals filing such return are no longer married or no longer reside in the same household, upon request in writing by either of such individuals, the Secretary shall disclose in writing to the individual making the request whether the Secretary has attempted to collect such deficiency from such other individual, the general nature of such collection activities, and the amount collected. The preceding sentence shall not apply to any deficiency which may not be collected by reason of section 6502.

**(9) Disclosure of certain information where more than 1 person subject to penalty under section 6672.**--If the Secretary determines that a person is liable for a penalty under section 6672(a) with respect to any failure, upon request in writing of such person, the Secretary shall disclose in writing to such person--

    **(A)** the name of any other person whom the Secretary has determined to be liable for such penalty with respect to such failure, and

**(B)** whether the Secretary has attempted to collect such penalty from such other person, the general nature of such collection activities, and the amount collected.

**(10) Limitation on certain disclosures under this subsection.**--In the case of an inspection or disclosure under this subsection relating to the return of a partnership, S corporation, trust, or an estate, the information inspected or disclosed shall not include any supporting schedule, attachment, or list which includes the taxpayer identity information of a person other than the entity making the return or the person conducting the inspection or to whom the disclosure is made.

**(f) Disclosure to Committees of Congress.--**

**(1) Committee on Ways and Means, Committee on Finance, and Joint Committee on Taxation.**--Upon written request from the chairman of the Committee on Ways and Means of the House of Representatives, the chairman of the Committee on Finance of the Senate, or the chairman of the Joint Committee on Taxation, the Secretary shall furnish such committee with any return or return information specified in such request, except that any return or return information which can be associated with, or otherwise identify, directly or indirectly, a particular taxpayer shall be furnished to such committee only when sitting in closed executive session unless such taxpayer otherwise consents in writing to such disclosure.

**(2) Chief of Staff of Joint Committee on Taxation.**--Upon written request by the Chief of Staff of the Joint Committee on Taxation, the Secretary shall furnish him with any return or return information specified in such request. Such Chief of Staff may submit such return or return information to any committee described in paragraph (1), except that any return or return information which can be associated with, or otherwise identify, directly or indirectly, a particular taxpayer shall be furnished to such committee only when sitting in closed executive session unless such taxpayer otherwise consents in writing to such disclosure.

**(3) Other committees.**--Pursuant to an action by, and upon written request by the chairman of, a committee of the Senate or the House of Representatives (other than a committee specified in paragraph (1)) specially authorized to inspect any return or return information by a resolution of the Senate or the House of Representatives or, in the case of a joint committee (other than the joint committee specified in paragraph (1)) by concurrent resolution, the Secretary shall furnish such committee, or a duly authorized and designated subcommittee thereof, sitting in closed executive session, with any return or return information which such resolution authorizes the committee or subcommittee to inspect. Any resolution described in this

paragraph shall specify the purpose for which the return or return information is to be furnished and that such information cannot reasonably be obtained from any other source.

**(4) Agents of committees and submission of information to Senate or House of Representatives.--**

    **(A) Committees described in paragraph (1).**--Any committee described in paragraph (1) or the Chief of Staff of the Joint Committee on Taxation shall have the authority, acting directly, or by or through such examiners or agents as the chairman of such committee or such chief of staff may designate or appoint, to inspect returns and return information at such time and in such manner as may be determined by such chairman or chief of staff. Any return or return information obtained by or on behalf of such committee pursuant to the provisions of this subsection may be submitted by the committee to the Senate or the House of Representatives, or to both. The Joint Committee on Taxation may also submit such return or return information to any other committee described in paragraph (1), except that any return or return information which can be associated with, or otherwise identify, directly or indirectly, a particular taxpayer shall be furnished to such committee only when sitting in closed executive session unless such taxpayer otherwise consents in writing to such disclosure.

    **(B) Other committees.**--Any committee or subcommittee described in paragraph (3) shall have the right, acting directly, or by or through no more than four examiners or agents, designated or appointed in writing in equal numbers by the chairman and ranking minority member of such committee or subcommittee, to inspect returns and return information at such time and in such manner as may be determined by such chairman and ranking minority member. Any return or return information obtained by or on behalf of such committee or subcommittee pursuant to the provisions of this subsection may be submitted by the committee to the Senate or the House of Representatives, or to both, except that any return or return information which can be associated with, or otherwise identify, directly or indirectly, a particular taxpayer, shall be furnished to the Senate or the House of Representatives only when sitting in closed executive session unless such taxpayer otherwise consents in writing to such disclosure.

**(5) Disclosure by whistleblower.**--Any person who otherwise has or had access to any return or return information under this section may disclose such return or return information to a committee referred to in paragraph (1)

or any individual authorized to receive or inspect information under paragraph (4)(A) if such person believes such return or return information may relate to possible misconduct, maladministration, or taxpayer abuse.

**(g) Disclosure to President and certain other persons.--**

**(1) In general.**--Upon written request by the President, signed by him personally, the Secretary shall furnish to the President, or to such employee or employees of the White House Office as the President may designate by name in such request, a return or return information with respect to any taxpayer named in such request. Any such request shall state--

**(A)** the name and address of the taxpayer whose return or return information is to be disclosed,

**(B)** the kind of return or return information which is to be disclosed,

**(C)** the taxable period or periods covered by such return or return information, and

**(D)** the specific reason why the inspection or disclosure is requested.

**(2) Disclosure of return information as to Presidential appointees and certain other Federal Government appointees.**--The Secretary may disclose to a duly authorized representative of the Executive Office of the President or to the head of any Federal agency, upon written request by the President or head of such agency, or to the Federal Bureau of Investigation on behalf of and upon written request by the President or such head, return information with respect to an individual who is designated as being under consideration for appointment to a position in the executive or judicial branch of the Federal Government. Such return information shall be limited to whether such individual--

**(A)** has filed returns with respect to the taxes imposed under chapter 1 for not more than the immediately preceding 3 years;

**(B)** has failed to pay any tax within 10 days after notice and demand, or has been assessed any penalty under this title for negligence, in the current year or immediately preceding 3 years;

**(C)** has been or is under investigation for possible criminal offenses under the internal revenue laws and the results of any such investigation; or

**(D)** has been assessed any civil penalty under this title for fraud.

Within 3 days of the receipt of any request for any return information with respect to any individual under this paragraph, the Secretary shall notify such individual in writing that such information has been requested under the provisions of this paragraph.

**(3) Restriction on disclosure.**--The employees to whom returns and return information are disclosed under this subsection shall not disclose such

returns and return information to any other person except the President or the head of such agency without the personal written direction of the President or the head of such agency.

**(4) Restriction on disclosure to certain employees.**--Disclosure of returns and return information under this subsection shall not be made to any employee whose annual rate of basic pay is less than the annual rate of basic pay specified for positions subject to section 5316 of title 5, United States Code.

**(5) Reporting requirements.**--Within 30 days after the close of each calendar quarter, the President and the head of any agency requesting returns and return information under this subsection shall each file a report with the Joint Committee on Taxation setting forth the taxpayers with respect to whom such requests were made during such quarter under this subsection, the returns or return information involved, and the reasons for such requests. The President shall not be required to report on any request for returns and return information pertaining to an individual who was an officer or employee of the executive branch of the Federal Government at the time such request was made. Reports filed pursuant to this paragraph shall not be disclosed unless the Joint Committee on Taxation determines that disclosure thereof (including identifying details) would be in the national interest. Such reports shall be maintained by the Joint Committee on Taxation for a period not exceeding 2 years unless, within such period, the Joint Committee on Taxation determines that a disclosure to the Congress is necessary.

**(h) Disclosure to certain Federal officers and employees for purposes of tax administration, etc.--**

**(1) Department of the Treasury.**--Returns and return information shall, without written request, be open to inspection by or disclosure to officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for tax administration purposes.

**(2) Department of Justice.**--In a matter involving tax administration, a return or return information shall be open to inspection by or disclosure to officers and employees of the Department of Justice (including United States attorneys) personally and directly engaged in, and solely for their use in, any proceeding before a Federal grand jury or preparation for any proceeding (or investigation which may result in such a proceeding) before a Federal grand jury or any Federal or State court, but only if--

**(A)** the taxpayer is or may be a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability in respect of any tax imposed under this title;

31

**(B)** the treatment of an item reflected on such return is or may be related to the resolution of an issue in the proceeding or investigation; or

**(C)** such return or return information relates or may relate to a transactional relationship between a person who is or may be a party to the proceeding and the taxpayer which affects, or may affect, the resolution of an issue in such proceeding or investigation.

**(3) Form of request.**--In any case in which the Secretary is authorized to disclose a return or return information to the Department of Justice pursuant to the provisions of this subsection--

**(A)** if the Secretary has referred the case to the Department of Justice, or if the proceeding is authorized by subchapter B of chapter 76, the Secretary may make such disclosure on his own motion, or

**(B)** if the Secretary receives a written request from the Attorney General, the Deputy Attorney General, or an Assistant Attorney General for a return of, or return information relating to, a person named in such request and setting forth the need for the disclosure, the Secretary shall disclose return or return the information so requested.

**(4) Disclosure in judicial and administrative tax proceedings.**--A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only--

**(A)** if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title;

**(B)** if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;

**(C)** if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or

**(D)** to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.

However, such return or return information shall not be disclosed as provided in subparagraph (A), (B), or (C) if the Secretary determines that

32

such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

**(5) Withholding of tax from social security benefits.**--Upon written request of the payor agency, the Secretary may disclose available return information from the master files of the Internal Revenue Service with respect to the address and status of an individual as a nonresident alien or as a citizen or resident of the United States to the Social Security Administration or the Railroad Retirement Board (whichever is appropriate) for purposes of carrying out its responsibilities for withholding tax under section 1441 from social security benefits (as defined in section 86(d)).

**(6) Internal Revenue Service Oversight Board.--**

    **(A) In general.**--Notwithstanding paragraph (1), and except as provided in subparagraph (B), no return or return information may be disclosed to any member of the Oversight Board described in subparagraph (A) or (D) of section 7802(b)(1) or to any employee or detailee of such Board by reason of their service with the Board. Any request for information not permitted to be disclosed under the preceding sentence, and any contact relating to a specific taxpayer, made by any such individual to an officer or employee of the Internal Revenue Service shall be reported by such officer or employee to the Secretary, the Treasury Inspector General for Tax Administration, and the Joint Committee on Taxation.

    **(B) Exception for reports to the Board.**--If--

        **(i)** the Commissioner or the Treasury Inspector General for Tax Administration prepares any report or other matter for the Oversight Board in order to assist the Board in carrying out its duties; and

        **(ii)** the Commissioner or such Inspector General determines it is necessary to include any return or return information in such report or other matter to enable the Board to carry out such duties,

    such return or return information (other than information regarding taxpayer identity) may be disclosed to members, employees, or detailees of the Board solely for the purpose of carrying out such duties.

**(i) Disclosure to Federal officers or employees for administration of Federal laws not relating to tax administration.--**

    **(1) Disclosure of returns and return information for use in criminal investigations.--**

**(A) In general.**--Except as provided in paragraph (6), any return or return information with respect to any specified taxable period or periods shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate under subparagraph (B), be open (but only to the extent necessary as provided in such order) to inspection by, or disclosure to, officers and employees of any Federal agency who are personally and directly engaged in--

> **(i)** preparation for any judicial or administrative proceeding pertaining to the enforcement of a specifically designated Federal criminal statute (not involving tax administration) to which the United States or such agency is or may be a party,
> **(ii)** any investigation which may result in such a proceeding, or
> **(iii)** any Federal grand jury proceeding pertaining to enforcement of such a criminal statute to which the United States or such agency is or may be a party,

solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding.

**(B) Application for order.**--The Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, any United States attorney, any special prosecutor appointed under section 593 of title 28, United States Code, or any attorney in charge of a criminal division organized crime strike force established pursuant to section 510 of title 28, United States Code, may authorize an application to a Federal district court judge or magistrate for the order referred to in subparagraph (A). Upon such application, such judge or magistrate may grant such order if he determines on the basis of the facts submitted by the applicant that--

> **(i)** there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed,
> **(ii)** there is reasonable cause to believe that the return or return information is or may be relevant to a matter relating to the commission of such act, and
> **(iii)** the return or return information is sought exclusively for use in a Federal criminal investigation or proceeding concerning such act, and the information sought to be disclosed cannot reasonably be obtained, under the circumstances, from another source.

**(2) Disclosure of return information other than taxpayer return information for use in criminal investigations.--**

34

**(A) In general.**--Except as provided in paragraph (6), upon receipt by the Secretary of a request which meets the requirements of subparagraph (B) from the head of any Federal agency or the Inspector General thereof, or, in the case of the Department of Justice, the Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, any United States attorney, any special prosecutor appointed under section 593 of title 28, United States Code, or any attorney in charge of a criminal division organized crime strike force established pursuant to section 510 of title 28, United States Code, the Secretary shall disclose return information (other than taxpayer return information) to officers and employees of such agency who are personally and directly engaged in--

> **(i)** preparation for any judicial or administrative proceeding described in paragraph (1)(A)(i),
> **(ii)** any investigation which may result in such a proceeding, or
> **(iii)** any grand jury proceeding described in paragraph (1)(A)(iii),

solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding.

**(B) Requirements.**--A request meets the requirements of this subparagraph if the request is in writing and sets forth--

> **(i)** the name and address of the taxpayer with respect to whom the requested return information relates;
> **(ii)** the taxable period or periods to which such return information relates;
> **(iii)** the statutory authority under which the proceeding or investigation described in subparagraph (A) is being conducted; and
> **(iv)** the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation.

**(C) Taxpayer identity.**--For purposes of this paragraph, a taxpayer's identity shall not be treated as taxpayer return information.

**(3) Disclosure of return information to apprise appropriate officials of criminal or terrorist activities or emergency circumstances.--**

**(A) Possible violations of Federal criminal law.--**

> **(i) In general.**--Except as provided in paragraph (6), the Secretary may disclose in writing return information (other than taxpayer return information) which may constitute evidence of

35

a violation of any Federal criminal law (not involving tax administration) to the extent necessary to apprise the head of the appropriate Federal agency charged with the responsibility of enforcing such law. The head of such agency may disclose such return information to officers and employees of such agency to the extent necessary to enforce such law.

**(ii) Taxpayer identity.**--If there is return information (other than taxpayer return information) which may constitute evidence of a violation by any taxpayer of any Federal criminal law (not involving tax administration), such taxpayer's identity may also be disclosed under clause (i).

**(B) Emergency circumstances.--**

**(i) Danger of death or physical injury.**--Under circumstances involving an imminent danger of death or physical injury to any individual, the Secretary may disclose return information to the extent necessary to apprise appropriate officers or employees of any Federal or State law enforcement agency of such circumstances.

**(ii) Flight from Federal prosecution.**--Under circumstances involving the imminent flight of any individual from Federal prosecution, the Secretary may disclose return information to the extent necessary to apprise appropriate officers or employees of any Federal law enforcement agency of such circumstances.

**(C) Terrorist activities, etc.--**

**(i) In general.**--Except as provided in paragraph (6), the Secretary may disclose in writing return information (other than taxpayer return information) that may be related to a terrorist incident, threat, or activity to the extent necessary to apprise the head of the appropriate Federal law enforcement agency responsible for investigating or responding to such terrorist incident, threat, or activity. The head of the agency may disclose such return information to officers and employees of such agency to the extent necessary to investigate or respond to such terrorist incident, threat, or activity.

**(ii) Disclosure to the Department of Justice.**--Returns and taxpayer return information may also be disclosed to the Attorney General under clause (i) to the extent necessary for, and solely for use in preparing, an application under paragraph (7)(D).

36

**(iii) Taxpayer identity.**--For purposes of this subparagraph, a taxpayer's identity shall not be treated as taxpayer return information.

**(4) Use of certain disclosed returns and return information in judicial or administrative proceedings.--**

**(A) Returns and taxpayer return information.**--Except as provided in subparagraph (C), any return or taxpayer return information obtained under paragraph (1) or (7)(C) may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute or related civil forfeiture (not involving tax administration) to which the United States or a Federal agency is a party--

**(i)** if the court finds that such return or taxpayer return information is probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party, or

**(ii)** to the extent required by order of the court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure.

**(B) Return information (other than taxpayer return information).**--Except as provided in subparagraph (C), any return information (other than taxpayer return information) obtained under paragraph (1), (2), (3)(A) or (C), or (7) may be disclosed in any judicial or administrative proceeding pertaining to enforcement of a specifically designated Federal criminal statute or related civil forfeiture (not involving tax administration) to which the United States or a Federal agency is a party.

**(C) Confidential informant; impairment of investigations.**--No return or return information shall be admitted into evidence under subparagraph (A)(i) or (B) if the Secretary determines and notifies the Attorney General or his delegate or the head of the Federal agency that such admission would identify a confidential informant or seriously impair a civil or criminal tax investigation.

**(D) Consideration of confidentiality policy.**--In ruling upon the admissibility of returns or return information, and in the issuance of an order under subparagraph (A)(ii), the court shall give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.

**(E) Reversible error.**--The admission into evidence of any return or return information contrary to the provisions of this paragraph shall

37

not, as such, constitute reversible error upon appeal of a judgment in the proceeding.

**(5) Disclosure to locate fugitives from justice.--**

**(A) In general.**--Except as provided in paragraph (6), the return of an individual or return information with respect to such individual shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate under subparagraph (B), be open (but only to the extent necessary as provided in such order) to inspection by, or disclosure to, officers and employees of any Federal agency exclusively for use in locating such individual.

**(B) Application for order.**--Any person described in paragraph (1)(B) may authorize an application to a Federal district court judge or magistrate for an order referred to in subparagraph (A). Upon such application, such judge or magistrate may grant such order if he determines on the basis of the facts submitted by the applicant that--

**(i)** a Federal arrest warrant relating to the commission of a Federal felony offense has been issued for an individual who is a fugitive from justice,

**(ii)** the return of such individual or return information with respect to such individual is sought exclusively for use in locating such individual, and

**(iii)** there is reasonable cause to believe that such return or return information may be relevant in determining the location of such individual.

**(6) Confidential informants; impairment of investigations.**--The Secretary shall not disclose any return or return information under paragraph (1), (2), (3)(A) or (C), (5), (7), or (8) if the Secretary determines (and, in the case of a request for disclosure pursuant to a court order described in paragraph (1)(B) or (5)(B), certifies to the court) that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

**(7) Disclosure upon request of information relating to terrorist activities, etc.--**

**(A) Disclosure to law enforcement agencies.--**

**(i) In general.**--Except as provided in paragraph (6), upon receipt by the Secretary of a written request which meets the requirements of clause (iii), the Secretary may disclose return information (other than taxpayer return information) to officers and employees of any Federal law enforcement agency who are

personally and directly engaged in the response to or investigation of any terrorist incident, threat, or activity.

**(ii) Disclosure to State and local law enforcement agencies.**-- The head of any Federal law enforcement agency may disclose return information obtained under clause (i) to officers and employees of any State or local law enforcement agency but only if such agency is part of a team with the Federal law enforcement agency in such response or investigation and such information is disclosed only to officers and employees who are personally and directly engaged in such response or investigation.

**(iii) Requirements.**--A request meets the requirements of this clause if--

> **(I)** the request is made by the head of any Federal law enforcement agency (or his delegate) involved in the response to or investigation of any terrorist incident, threat, or activity, and
>
> **(II)** the request sets forth the specific reason or reasons why such disclosure may be relevant to a terrorist incident, threat, or activity.

**(iv) Limitation on use of information.**--Information disclosed under this subparagraph shall be solely for the use of the officers and employees to whom such information is disclosed in such response or investigation.

**(v) Taxpayer identity.**--For purposes of this subparagraph, a taxpayer's identity shall not be treated as taxpayer return information.

**(B) Disclosure to intelligence agencies.**--

**(i) In general.**--Except as provided in paragraph (6), upon receipt by the Secretary of a written request which meets the requirements of clause (ii), the Secretary may disclose return information (other than taxpayer return information) to those officers and employees of the Department of Justice, the Department of the Treasury, and other Federal intelligence agencies who are personally and directly engaged in the collection or analysis of intelligence and counterintelligence information or investigation concerning any terrorist incident, threat, or activity. For purposes of the preceding sentence, the information disclosed under the preceding sentence shall be

39

solely for the use of such officers and employees in such investigation, collection, or analysis.

**(ii) Requirements.**--A request meets the requirements of this subparagraph if the request--

> **(I)** is made by an individual described in clause (iii), and
>
> **(II)** sets forth the specific reason or reasons why such disclosure may be relevant to a terrorist incident, threat, or activity.

**(iii) Requesting individuals.**--An individual described in this subparagraph is an individual--

> **(I)** who is an officer or employee of the Department of Justice or the Department of the Treasury who is appointed by the President with the advice and consent of the Senate or who is the Director of the United States Secret Service, and
>
> **(II)** who is responsible for the collection and analysis of intelligence and counterintelligence information concerning any terrorist incident, threat, or activity.

**(iv) Taxpayer identity.**--For purposes of this subparagraph, a taxpayer's identity shall not be treated as taxpayer return information.

**(C) Disclosure under ex parte orders.--**

> **(i) In general.**--Except as provided in paragraph (6), any return or return information with respect to any specified taxable period or periods shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate under clause (ii), be open (but only to the extent necessary as provided in such order) to inspection by, or disclosure to, officers and employees of any Federal law enforcement agency or Federal intelligence agency who are personally and directly engaged in any investigation, response to, or analysis of intelligence and counterintelligence information concerning any terrorist incident, threat, or activity. Return or return information opened to inspection or disclosure pursuant to the preceding sentence shall be solely for the use of such officers and employees in the investigation, response, or analysis, and in any judicial, administrative, or grand jury proceedings, pertaining to such terrorist incident, threat, or activity.
>
> **(ii) Application for order.**--The Attorney General, the Deputy Attorney General, the Associate Attorney General, any

Assistant Attorney General, or any United States attorney may authorize an application to a Federal district court judge or magistrate for the order referred to in clause (i). Upon such application, such judge or magistrate may grant such order if he determines on the basis of the facts submitted by the applicant that--

> **(I)** there is reasonable cause to believe, based upon information believed to be reliable, that the return or return information may be relevant to a matter relating to such terrorist incident, threat, or activity, and
>
> **(II)** the return or return information is sought exclusively for use in a Federal investigation, analysis, or proceeding concerning any terrorist incident, threat, or activity.

**(D) Special rule for ex parte disclosure by the IRS.--**

**(i) In general.**--Except as provided in paragraph (6), the Secretary may authorize an application to a Federal district court judge or magistrate for the order referred to in subparagraph (C)(i). Upon such application, such judge or magistrate may grant such order if he determines on the basis of the facts submitted by the applicant that the requirements of subparagraph (C)(ii)(I) are met.

**(ii) Limitation on use of information.**--Information disclosed under clause (i)--

> **(I)** may be disclosed only to the extent necessary to apprise the head of the appropriate Federal law enforcement agency responsible for investigating or responding to a terrorist incident, threat, or activity, and
>
> **(II)** shall be solely for use in a Federal investigation, analysis, or proceeding concerning any terrorist incident, threat, or activity.

The head of such Federal agency may disclose such information to officers and employees of such agency to the extent necessary to investigate or respond to such terrorist incident, threat, or activity.

**(8) Comptroller General.--**

**(A) Returns available for inspection.**--Except as provided in subparagraph (C), upon written request by the Comptroller General of the United States, returns and return information shall be open to inspection by, or disclosure to, officers and employees of the

41

Government Accountability Office for the purpose of, and to the extent necessary in, making--

> **(i)** an audit of the Internal Revenue Service, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Department of Justice, or the Tax and Trade Bureau, Department of the Treasury, which may be required by section 713 of title 31, United States Code, or
>
> **(ii)** any audit authorized by subsection (p)(6),

except that no such officer or employee shall, except to the extent authorized by subsection (f) or (p)(6), disclose to any person, other than another officer or employee of such office whose official duties require such disclosure, any return or return information described in section 4424(a) in a form which can be associated with, or otherwise identify, directly or indirectly, a particular taxpayer, nor shall such officer or employee disclose any other return or return information, except as otherwise expressly provided by law, to any person other than such other officer or employee of such office in a form which can be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

**(B) Audits of other agencies.--**

> **(i) In general.**--Nothing in this section shall prohibit any return or return information obtained under this title by any Federal agency (other than an agency referred to in subparagraph (A)) or by a Trustee as defined in the District of Columbia Retirement Protection Act of 1997 for use in any program or activity from being open to inspection by, or disclosure to, officers and employees of the Government Accountability Office if such inspection or disclosure is--
>
> > **(I)** for purposes of, and to the extent necessary in, making an audit authorized by law of such program or activity, and
> >
> > **(II)** pursuant to a written request by the Comptroller General of the United States to the head of such Federal agency.
>
> **(ii) Information from Secretary.**--If the Comptroller General of the United States determines that the returns or return information available under clause (i) are not sufficient for purposes of making an audit of any program or activity of a Federal agency (other than an agency referred to in subparagraph (A)), upon written request by the Comptroller

42

General to the Secretary, returns and return information (of the type authorized by subsection (l) or (m) to be made available to the Federal agency for use in such program or activity) shall be open to inspection by, or disclosure to, officers and employees of the Government Accountability Office for the purpose of, and to the extent necessary in, making such audit.

**(iii) Requirement of notification upon completion of audit.**-- Within 90 days after the completion of an audit with respect to which returns or return information were opened to inspection or disclosed under clause (i) or (ii), the Comptroller General of the United States shall notify in writing the Joint Committee on Taxation of such completion. Such notice shall include--

> **(I)** a description of the use of the returns and return information by the Federal agency involved,
>
> **(II)** such recommendations with respect to the use of returns and return information by such Federal agency as the Comptroller General deems appropriate, and
>
> **(III)** a statement on the impact of any such recommendations on confidentiality of returns and return information and the administration of this title.

**(iv) Certain restrictions made applicable.**--The restrictions contained in subparagraph (A) on the disclosure of any returns or return information open to inspection or disclosed under such subparagraph shall also apply to returns and return information open to inspection or disclosed under this subparagraph.

**(C) Disapproval by Joint Committee on Taxation.**--Returns and return information shall not be open to inspection or disclosed under subparagraph (A) or (B) with respect to an audit--

> **(i)** unless the Comptroller General of the United States notifies in writing the Joint Committee on Taxation of such audit, and
>
> **(ii)** if the Joint Committee on Taxation disapproves such audit by a vote of at least two-thirds of its members within the 30-day period beginning on the day the Joint Committee on Taxation receives such notice.

**(j) Statistical use.**--

> **(1) Department of Commerce.**--Upon request in writing by the Secretary of Commerce, the Secretary shall furnish--
>
> > **(A)** such returns, or return information reflected thereon, to officers and employees of the Bureau of the Census, and

**(B)** such return information reflected on returns of corporations to officers and employees of the Bureau of Economic Analysis,

as the Secretary may prescribe by regulation for the purpose of, but only to the extent necessary in, the structuring of censuses and national economic accounts and conducting related statistical activities authorized by law.

**(2) Federal Trade Commission.**--Upon request in writing by the Chairman of the Federal Trade Commission, the Secretary shall furnish such return information reflected on any return of a corporation with respect to the tax imposed by chapter 1 to officers and employees of the Division of Financial Statistics of the Bureau of Economics of such commission as the Secretary may prescribe by regulation for the purpose of, but only to the extent necessary in, administration by such division of legally authorized economic surveys of corporations.

**(3) Department of Treasury.**--Returns and return information shall be open to inspection by or disclosure to officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for the purpose of, but only to the extent necessary in, preparing economic or financial forecasts, projections, analyses, and statistical studies and conducting related activities. Such inspection or disclosure shall be permitted only upon written request which sets forth the specific reason or reasons why such inspection or disclosure is necessary and which is signed by the head of the bureau or office of the Department of the Treasury requesting the inspection or disclosure.

**(4) Anonymous form.**--No person who receives a return or return information under this subsection shall disclose such return or return information to any person other than the taxpayer to whom it relates except in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

**(5) Department of Agriculture.**--Upon request in writing by the Secretary of Agriculture, the Secretary shall furnish such returns, or return information reflected thereon, as the Secretary may prescribe by regulation to officers and employees of the Department of Agriculture whose official duties require access to such returns or information for the purpose of, but only to the extent necessary in, structuring, preparing, and conducting the census of agriculture pursuant to the Census of Agriculture Act of 1997 (Public Law 105-113).

**(6) Congressional Budget Office.**--Upon written request by the Director of the Congressional Budget Office, the Secretary shall furnish to officers and employees of the Congressional Budget Office return information for the

purpose of, but only to the extent necessary for, long-term models of the social security and medicare programs.

**(k) Disclosure of certain returns and return information for tax administration purposes.--**

**(1) Disclosure of accepted offers-in-compromise.**--Return information shall be disclosed to members of the general public to the extent necessary to permit inspection of any accepted offer-in-compromise under section 7122 relating to the liability for a tax imposed by this title.

**(2) Disclosure of amount of outstanding lien.**--If a notice of lien has been filed pursuant to section 6323(f), the amount of the outstanding obligation secured by such lien may be disclosed to any person who furnishes satisfactory written evidence that he has a right in the property subject to such lien or intends to obtain a right in such property.

**(3) Disclosure of return information to correct misstatements of fact.**-- The Secretary may, but only following approval by the Joint Committee on Taxation, disclose such return information or any other information with respect to any specific taxpayer to the extent necessary for tax administration purposes to correct a misstatement of fact published or disclosed with respect to such taxpayer's return or any transaction of the taxpayer with the Internal Revenue Service.

**(4) Disclosure to competent authority under income tax convention.**--A return or return information may be disclosed to a competent authority of a foreign government which has an income tax or gift and estate tax convention, or other convention or bilateral agreement relating to the exchange of tax information, with the United States but only to the extent provided in, and subject to the terms and conditions of, such convention or bilateral agreement.

**(5) State agencies regulating tax return preparers.**--Taxpayer identity information with respect to any tax return preparer, and information as to whether or not any penalty has been assessed against such tax return preparer under section 6694, 6695, or 7216, may be furnished to any agency, body, or commission lawfully charged under any State or local law with the licensing, registration, or regulation of tax return preparers. Such information may be furnished only upon written request by the head of such agency, body, or commission designating the officers or employees to whom such information is to be furnished. Information may be furnished and used under this paragraph only for purposes of the licensing, registration, or regulation of tax return preparers.

**(6) Disclosure by certain officers and employees for investigative purposes.**--An internal revenue officer or employee and an officer or

45

employee of the Office of Treasury Inspector General for Tax Administration may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

**(7) Disclosure of excise tax registration information.**--To the extent the Secretary determines that disclosure is necessary to permit the effective administration of subtitle D, the Secretary may disclose--

> **(A)** the name, address, and registration number of each person who is registered under any provision of subtitle D (and, in the case of a registered terminal operator, the address of each terminal operated by such operator), and

> **(B)** the registration status of any person.

**(8) Levies on certain government payments.--**

> **(A) Disclosure of return information in levies on Financial Management Service.**--In serving a notice of levy, or release of such levy, with respect to any applicable government payment, the Secretary may disclose to officers and employees of the Financial Management Service--

>> **(i)** return information, including taxpayer identity information,

>> **(ii)** the amount of any unpaid liability under this title (including penalties and interest), and

>> **(iii)** the type of tax and tax period to which such unpaid liability relates.

> **(B) Restriction on use of disclosed information.**--Return information disclosed under subparagraph (A) may be used by officers and employees of the Financial Management Service only for the purpose of, and to the extent necessary in, transferring levied funds in satisfaction of the levy, maintaining appropriate agency records in regard to such levy or the release thereof, notifying the taxpayer and the agency certifying such payment that the levy has been honored, or in the defense of any litigation ensuing from the honor of such levy.

> **(C) Applicable government payment.**--For purposes of this paragraph, the term "applicable government payment" means--

46

**(i)** any Federal payment (other than a payment for which eligibility is based on the income or assets (or both) of a payee) certified to the Financial Management Service for disbursement, and

**(ii)** any other payment which is certified to the Financial Management Service for disbursement and which the Secretary designates by published notice.

**(9) Disclosure of information to administer section 6311.**--The Secretary may disclose returns or return information to financial institutions and others to the extent the Secretary deems necessary for the administration of section 6311. Disclosures of information for purposes other than to accept payments by checks or money orders shall be made only to the extent authorized by written procedures promulgated by the Secretary.

**(10) Disclosure of certain returns and return information to certain prison officials.**--

**(A) In general.**--Under such procedures as the Secretary may prescribe, the Secretary may disclose to officers and employees of the Federal Bureau of Prisons and of any State agency charged with the responsibility for administration of prisons any returns or return information with respect to individuals incarcerated in Federal or State prison systems whom the Secretary has determined may have filed or facilitated the filing of a false or fraudulent return to the extent that the Secretary determines that such disclosure is necessary to permit effective Federal tax administration.

**(B) Disclosure to contractor-run prisons.**--Under such procedures as the Secretary may prescribe, the disclosures authorized by subparagraph (A) may be made to contractors responsible for the operation of a Federal or State prison on behalf of such Bureau or agency.

**(C) Restrictions on use of disclosed information.**--Any return or return information received under this paragraph shall be used only for the purposes of and to the extent necessary in taking administrative action to prevent the filing of false and fraudulent returns, including administrative actions to address possible violations of administrative rules and regulations of the prison facility and in administrative and judicial proceedings arising from such administrative actions.

**(D) Restrictions on redisclosure and disclosure to legal representatives.**--Notwithstanding subsection (h)--

**(i) Restrictions on redisclosure.**--Except as provided in clause (ii), any officer, employee, or contractor of the Federal Bureau of Prisons or of any State agency charged with the responsibility for administration of prisons shall not disclose any information obtained under this paragraph to any person other than an officer or employee or contractor of such Bureau or agency personally and directly engaged in the administration of prison facilities on behalf of such Bureau or agency.

**(ii) Disclosure to legal representatives.**--The returns and return information disclosed under this paragraph may be disclosed to the duly authorized legal representative of the Federal Bureau of Prisons, State agency, or contractor charged with the responsibility for administration of prisons, or of the incarcerated individual accused of filing the false or fraudulent return who is a party to an action or proceeding described in subparagraph (C), solely in preparation for, or for use in, such action or proceeding.

**(l) Disclosure of returns and return information for purposes other than tax administration.--**

**(1) Disclosure of certain returns and return information to Social Security Administration and Railroad Retirement Board.**--The Secretary may, upon written request, disclose returns and return information with respect to--

**(A)** taxes imposed by chapters 2, 21, and 24, to the Social Security Administration for purposes of its administration of the Social Security Act;

**(B)** a plan to which part I of subchapter D of chapter 1 applies, to the Social Security Administration for purposes of carrying out its responsibility under section 1131 of the Social Security Act, limited, however to return information described in section 6057(d); and

**(C)** taxes imposed by chapter 22, to the Railroad Retirement Board for purposes of its administration of the Railroad Retirement Act.

**(2) Disclosure of returns and return information to the Department of Labor and Pension Benefit Guaranty Corporation.**--The Secretary may, upon written request, furnish returns and return information to the proper officers and employees of the Department of Labor and the Pension Benefit Guaranty Corporation for purposes of, but only to the extent necessary in, the administration of titles I and IV of the Employee Retirement Income Security Act of 1974.

**(3) Disclosure that applicant for Federal loan has tax delinquent account.--**

    **(A) In general.**--Upon written request, the Secretary may disclose to the head of the Federal agency administering any included Federal loan program whether or not an applicant for a loan under such program has a tax delinquent account.

    **(B) Restriction on disclosure.**--Any disclosure under subparagraph (A) shall be made only for the purpose of, and to the extent necessary in, determining the creditworthiness of the applicant for the loan in question.

    **(C) Included Federal loan program defined.**--For purposes of this paragraph, the term "included Federal loan program" means any program under which the United States or a Federal agency makes, guarantees, or insures loans.

**(4) Disclosure of returns and return information for use in personnel or claimant representative matters.**--The Secretary may disclose returns and return information--

    **(A)** upon written request--

        **(i)** to an employee or former employee of the Department of the Treasury, or to the duly authorized legal representative of such employee or former employee, who is or may be a party to any administrative action or proceeding affecting the personnel rights of such employee or former employee; or

        **(ii)** to any person, or to the duly authorized legal representative of such person, whose rights are or may be affected by an administrative action or proceeding under section 330 of title 31, United States Code,

    solely for use in the action or proceeding, or in preparation for the action or proceeding, but only to the extent that the Secretary determines that such returns or return information is or may be relevant and material to the action or proceeding; or

    **(B)** to officers and employees of the Department of the Treasury for use in any action or proceeding described in subparagraph (A), or in preparation for such action or proceeding, to the extent necessary to advance or protect the interests of the United States.

**(5) Social Security Administration.**--Upon written request by the Commissioner of Social Security, the Secretary may disclose information returns filed pursuant to part III of subchapter A of chapter 61 of this subtitle for the purpose of--

49

**(A)** carrying out, in accordance with an agreement entered into pursuant to section 232 of the Social Security Act, an effective return processing program; or

**(B)** providing information regarding the mortality status of individuals for epidemiological and similar research in accordance with section 1106(d) of the Social Security Act.

**(6) Disclosure of return information to Federal, State, and local child support enforcement agencies.--**

**(A) Return information from Internal Revenue Service.**--The Secretary may, upon written request, disclose to the appropriate Federal, State, or local child support enforcement agency--

**(i)** available return information from the master files of the Internal Revenue Service relating to the social security account number (or numbers, if the individual involved has more than one such number), address, filing status, amounts and nature of income, and the number of dependents reported on any return filed by, or with respect to, any individual with respect to whom child support obligations are sought to be established or enforced pursuant to the provisions of part D of title IV of the Social Security Act and with respect to any individual to whom such support obligations are owing, and

**(ii)** available return information reflected on any return filed by, or with respect to, any individual described in clause (i) relating to the amount of such individual's gross income (as defined in section 61) or consisting of the names and addresses of payors of such income and the names of any dependents reported on such return, but only if such return information is not reasonably available from any other source.

**(B) Disclosure to certain agents.**--The following information disclosed to any child support enforcement agency under subparagraph (A) with respect to any individual with respect to whom child support obligations are sought to be established or enforced may be disclosed by such agency to any agent of such agency which is under contract with such agency to carry out the purposes described in subparagraph (C):

**(i)** The address and social security account number (or numbers) of such individual.

**(ii)** The amount of any reduction under section 6402(c) (relating to offset of past-due support against overpayments) in any overpayment otherwise payable to such individual.

**(C) Restriction on disclosure.**--Information may be disclosed under this paragraph only for purposes of, and to the extent necessary in, establishing and collecting child support obligations from, and locating, individuals owing such obligations.

**(7) Disclosure of return information to Federal, State, and local agencies administering certain programs under the Social Security Act, the Food and Nutrition Act of 2008 or title 38, United States Code, or certain housing assistance programs.--**

**(A) Return information from Social Security Administration.**--The Commissioner of Social Security shall, upon written request, disclose return information from returns with respect to net earnings from self-employment (as defined in section 1402), wages (as defined in section 3121(a) or 3401(a)), and payments of retirement income, which have been disclosed to the Social Security Administration as provided by paragraph (1) or (5) of this subsection, to any Federal, State, or local agency administering a program listed in subparagraph (D).

**(B) Return information from Internal Revenue Service.**--The Secretary shall, upon written request, disclose current return information from returns with respect to unearned income from the Internal Revenue Service files to any Federal, State, or local agency administering a program listed in subparagraph (D).

**(C) Restriction on disclosure.**--The Commissioner of Social Security and the Secretary shall disclose return information under subparagraphs (A) and (B) only for purposes of, and to the extent necessary in, determining eligibility for, or the correct amount of, benefits under a program listed in subparagraph (D).

**(D) Programs to which rule applies.**--The programs to which this paragraph applies are:

**(i)** a State program funded under part A of title IV of the Social Security Act;

**(ii)** medical assistance provided under a State plan approved under title XIX of the Social Security Act or subsidies provided under section 1860D-14 of such Act;

**(iii)** supplemental security income benefits provided under title XVI of the Social Security Act, and federally administered supplementary payments of the type described in section 1616(a) of such Act (including payments pursuant to an agreement entered into under section 212(a) of Public Law 93-66);

**(iv)** any benefits provided under a State plan approved under title I, X, XIV, or XVI of the Social Security Act (as those titles apply to Puerto Rico, Guam, and the Virgin Islands);

**(v)** unemployment compensation provided under a State law described in section 3304of this title;

**(vi)** assistance provided under the Food and Nutrition Act of 2008;

**(vii)** State-administered supplementary payments of the type described in section 1616(a) of the Social Security Act (including payments pursuant to an agreement entered into under section 212(a) of Public Law 93-66);

**(viii)** **(I)** any needs-based pension provided under chapter 15 of title 38, United States Code, or under any other law administered by the Secretary of Veterans Affairs;

**(II)** parents' dependency and indemnity compensation provided under section 1315 of title 38, United States Code;

**(III)** health-care services furnished under sections 1710(a)(2)(G), 1710(a)(3), and 1710(b) of such title; and

**(IV)** compensation paid under chapter 11 of title 38, United States Code, at the 100 percent rate based solely on unemployability and without regard to the fact that the disability or disabilities are not rated as 100 percent disabling under the rating schedule; and

**(ix)** any housing assistance program administered by the Department of Housing and Urban Development that involves initial and periodic review of an applicant's or participant's income, except that return information may be disclosed under this clause only on written request by the Secretary of Housing and Urban Development and only for use by officers and employees of the Department of Housing and Urban Development with respect to applicants for and participants in such programs.

Only return information from returns with respect to net earnings from self-employment and wages may be disclosed under this paragraph for use with respect to any program described in clause (viii)(IV).

**(8) Disclosure of certain return information by Social Security Administration to Federal, State, and local child support enforcement agencies.--**

52

**(A) In general.**--Upon written request, the Commissioner of Social Security shall disclose directly to officers and employees of a Federal or State or local child support enforcement agency return information from returns with respect to social security account numbers, net earnings from self-employment (as defined in section 1402), wages (as defined in section 3121(a) or 3401(a)), and payments of retirement income which have been disclosed to the Social Security Administration as provided by paragraph (1) or (5) of this subsection.

**(B) Restriction on disclosure.**--The Commissioner of Social Security shall disclose return information under subparagraph (A) only for purposes of, and to the extent necessary in, establishing and collecting child support obligations from, and locating, individuals owing such obligations. For purposes of the preceding sentence, the term "child support obligations" only includes obligations which are being enforced pursuant to a plan described in section 454 of the Social Security Act which has been approved by the Secretary of Health and Human Services under part D of title IV of such Act.

**(C) State or local child support enforcement agency.**--For purposes of this paragraph, the term "State or local child support enforcement agency" means any agency of a State or political subdivision thereof operating pursuant to a plan described in subparagraph (B).

**(9) Disclosure of alcohol fuel producers to administrators of State alcohol laws.**--Notwithstanding any other provision of this section, the Secretary may disclose--

**(A)** the name and address of any person who is qualified to produce alcohol for fuel use under section 5181, and

**(B)** the location of any premises to be used by such person in producing alcohol for fuel,

to any State agency, body, or commission, or its legal representative, which is charged under the laws of such State with responsibility for administration of State alcohol laws solely for use in the administration of such laws.

**(10) Disclosure of certain information to agencies requesting a reduction under subsection (c), (d), (e), or (f) of section 6402.--**

**(A) Return information from Internal Revenue Service.**--The Secretary may, upon receiving a written request, disclose to officers and employees of any agency seeking a reduction under subsection (c), (d), (e), or (f) of section 6402, to officers and employees of the Department of Labor for purposes of facilitating the exchange of data in connection with a request made under subsection (f)(5) of section

6402, and to officers and employees of the Department of the Treasury in connection with such reduction--

>    **(i)** taxpayer identity information with respect to the taxpayer against whom such a reduction was made or not made and with respect to any other person filing a joint return with such taxpayer,
>
>    **(ii)** the fact that a reduction has been made or has not been made under such subsection with respect to such taxpayer,
>
>    **(iii)** the amount of such reduction,
>
>    **(iv)** whether such taxpayer filed a joint return, and
>
>    **(v)** the fact that a payment was made (and the amount of the payment) to the spouse of the taxpayer on the basis of a joint return.

**(B)** **(i) Restriction on use of disclosed information.**--Any officers and employees of an agency receiving return information under subparagraph (A) shall use such information only for the purposes of, and to the extent necessary in, establishing appropriate agency records, locating any person with respect to whom a reduction under subsection (c), (d), (e), or (f) of section 6402 is sought for purposes of collecting the debt with respect to which the reduction is sought, or in the defense of any litigation or administrative procedure ensuing from a reduction made under subsection (c), (d), (e), or(f) of section 6402.

**(ii)** Notwithstanding clause (i), return information disclosed to officers and employees of the Department of Labor may be accessed by agents who maintain and provide technological support to the Department of Labor's Interstate Connection Network (ICON) solely for the purpose of providing such maintenance and support.

**(11) Disclosure of return information to carry out Federal Employees' Retirement System.--**

**(A) In general.**--The Commissioner of Social Security shall, on written request, disclose to the Office of Personnel Management return information from returns with respect to net earnings from self-employment (as defined in section 1402), wages (as defined in section 3121(a) or 3401(a)), and payments of retirement income, which have been disclosed to the Social Security Administration as provided by paragraph (1) or (5).

**(B) Restriction on disclosure.**--The Commissioner of Social Security shall disclose return information under subparagraph (A) only for

purposes of, and to the extent necessary in, the administration of chapters 83 and 84 of title 5, United States Code.

**(12) Disclosure of certain taxpayer identity information for verification of employment status of medicare beneficiary and spouse of medicare beneficiary.--**

**(A) Return information from Internal Revenue Service.**--The Secretary shall, upon written request from the Commissioner of Social Security, disclose to the Commissioner available filing status and taxpayer identity information from the individual master files of the Internal Revenue Service relating to whether any medicare beneficiary identified by the Commissioner was a married individual (as defined in section 7703) for any specified year after 1986, and, if so, the name of the spouse of such individual and such spouse's TIN.

**(B) Return information from Social Security Administration.**--The Commissioner of Social Security shall, upon written request from the Administrator of the Centers for Medicare & Medicaid Services, disclose to the Administrator the following information:

**(i)** The name and TIN of each medicare beneficiary who is identified as having received wages (as defined in section 3401(a)), above an amount (if any) specified by the Secretary of Health and Human Services, from a qualified employer in a previous year.

**(ii)** For each medicare beneficiary who was identified as married under subparagraph (A) and whose spouse is identified as having received wages, above an amount (if any) specified by the Secretary of Health and Human Services, from a qualified employer in a previous year--

**(I)** the name and TIN of the medicare beneficiary, and

**(II)** the name and TIN of the spouse.

**(iii)** With respect to each such qualified employer, the name, address, and TIN of the employer and the number of individuals with respect to whom written statements were furnished under section 6051 by the employer with respect to such previous year.

**(C) Disclosure by Centers for Medicare & Medicaid Services.**--With respect to the information disclosed under subparagraph (B), the Administrator of the Centers for Medicare & Medicaid Services may disclose--

**(i)** to the qualified employer referred to in such subparagraph the name and TIN of each individual identified under such

55

subparagraph as having received wages from the employer (hereinafter in this subparagraph referred to as the "employee") for purposes of determining during what period such employee or the employee's spouse may be (or have been) covered under a group health plan of the employer and what benefits are or were covered under the plan (including the name, address, and identifying number of the plan),

**(ii)** to any group health plan which provides or provided coverage to such an employee or spouse, the name of such employee and the employee's spouse (if the spouse is a medicare beneficiary) and the name and address of the employer, and, for the purpose of presenting a claim to the plan--

> **(I)** the TIN of such employee if benefits were paid under title XVIII of the Social Security Act with respect to the employee during a period in which the plan was a primary plan (as defined in section 1862(b)(2)(A) of the Social Security Act), and

> **(II)** the TIN of such spouse if benefits were paid under such title with respect to the spouse during such period, and

**(iii)** to any agent of such Administrator the information referred to in subparagraph (B) for purposes of carrying out clauses (i) and (ii) on behalf of such Administrator.

**(D) Special rules.--**

> **(i) Restrictions on disclosure.**--Information may be disclosed under this paragraph only for purposes of, and to the extent necessary in, determining the extent to which any medicare beneficiary is covered under any group health plan.

> **(ii) Timely response to requests.**--Any request made under subparagraph (A) or (B) shall be complied with as soon as possible but in no event later than 120 days after the date the request was made.

**(E) Definitions.**--For purposes of this paragraph--

> **(i) Medicare beneficiary.**--The term "medicare beneficiary" means an individual entitled to benefits under part A, or enrolled under part B, of title XVIII of the Social Security Act, but does not include such an individual enrolled in part A under section 1818.

**(ii) Group health plan.**--The term "group health plan" means any group health plan (as defined in section 5000(b)(1)).

**(iii) Qualified employer.**--The term "qualified employer" means, for a calendar year, an employer which has furnished written statements under section 6051 with respect to at least 20 individuals for wages paid in the year.

**(13) Disclosure of return information to carry out income contingent repayment of student loans.--**

**(A) In general.**--The Secretary may, upon written request from the Secretary of Education, disclose to officers and employees of the Department of Education return information with respect to a taxpayer who has received an applicable student loan and whose loan repayment amounts are based in whole or in part on the taxpayer's income. Such return information shall be limited to--

**(i)** taxpayer identity information with respect to such taxpayer,

**(ii)** the filing status of such taxpayer, and

**(iii)** the adjusted gross income of such taxpayer.

**(B) Restriction on use of disclosed information.**--Return information disclosed under subparagraph (A) may be used by officers and employees of the Department of Education only for the purposes of, and to the extent necessary in, establishing the appropriate income contingent repayment amount for an applicable student loan.

**(C) Applicable student loan.**--For purposes of this paragraph, the term "applicable student loan" means--

**(i)** any loan made under the program authorized under part D of title IV of the Higher Education Act of 1965, and

**(ii)** any loan made under part B or E of title IV of the Higher Education Act of 1965 which is in default and has been assigned to the Department of Education.

**(D) Termination.**--This paragraph shall not apply to any request made after December 31, 2007.

**(14) Disclosure of return information to United States Customs Service.**--The Secretary may, upon written request from the Commissioner of the United States Customs Service, disclose to officers and employees of the Department of the Treasury such return information with respect to taxes imposed by chapters 1 and 6 as the Secretary may prescribe by regulations, solely for the purpose of, and only to the extent necessary in--

**(A)** ascertaining the correctness of any entry in audits as provided for in section 509 of the Tariff Act of 1930 (19 U.S.C. 1509), or

57

**(B)** other actions to recover any loss of revenue, or to collect duties, taxes, and fees, determined to be due and owing pursuant to such audits.

**(15) Disclosure of returns filed under section 6050I.**--The Secretary may, upon written request, disclose to officers and employees of--

    **(A)** any Federal agency,

    **(B)** any agency of a State or local government, or

    **(C)** any agency of the government of a foreign country, information contained on returns filed under section 6050I. Any such disclosure shall be made on the same basis, and subject to the same conditions, as apply to disclosures of information on reports filed under section 5313 of title 31, United States Code; except that no disclosure under this paragraph shall be made for purposes of the administration of any tax law.

**(16) Disclosure of return information for purposes of administering the District of Columbia Retirement Protection Act of 1997--**

    **(A) In general**--Upon written request available return information (including such information disclosed to the Social Security Administration under paragraph (1) or (5) of this subsection), relating to the amount of wage income (as defined in section 3121(a) or 3401(a)), the name, address, and identifying number assigned under section 6109, of payors of wage income, taxpayer identity (as defined in subsection[1] 6103(b)(6)), and the occupational status reflected on any return filed by, or with respect to, any individual with respect to whom eligibility for, or the correct amount of, benefits under the District of Columbia Retirement Protection Act of 1997, is sought to be determined, shall be disclosed by the Commissioner of Social Security, or to the extent not available from the Social Security Administration, by the Secretary, to any duly authorized officer or employee of the Department of the Treasury, or a Trustee or any designated officer or employee of a Trustee (as defined in the District of Columbia Retirement Protection Act of 1997), or any actuary engaged by a Trustee under the terms of the District of Columbia Retirement Protection Act of 1997, whose official duties require such disclosure, solely for the purpose of, and to the extent necessary in, determining an individual's eligibility for, or the correct amount of, benefits under the District of Columbia Retirement Protection Act of 1997.

    **(B) Disclosure for use in judicial or administrative proceedings**--Return information disclosed to any person under this paragraph may

be disclosed in a judicial or administrative proceeding relating to the determination of an individual's eligibility for, or the correct amount of, benefits under the District of Columbia Retirement Protection Act of 1997.

**(17) Disclosure to National Archives and Records Administration.**--The Secretary shall, upon written request from the Archivist of the United States, disclose or authorize the disclosure of returns and return information to officers and employees of the National Archives and Records Administration for purposes of, and only to the extent necessary in, the appraisal of records for destruction or retention. No such officer or employee shall, except to the extent authorized by subsection (f), (i)(8), or (p), disclose any return or return information disclosed under the preceding sentence to any person other than to the Secretary, or to another officer or employee of the National Archives and Records Administration whose official duties require such disclosure for purposes of such appraisal.

**(18) Disclosure of return information for purposes of carrying out a program for advance payment of credit for health insurance costs of eligible individuals.**--The Secretary may disclose to providers of health insurance for any certified individual (as defined in section 7527(c)) return information with respect to such certified individual only to the extent necessary to carry out the program established by section 7527 (relating to advance payment of credit for health insurance costs of eligible individuals).

**(19) Disclosure of return information for purposes of providing transitional assistance under medicare discount card program.--**

    **(A) In general.**--The Secretary, upon written request from the Secretary of Health and Human Services pursuant to carrying out section 1860D-31 of the Social Security Act, shall disclose to officers, employees, and contractors of the Department of Health and Human Services with respect to a taxpayer for the applicable year--

        **(i)**  **(I)** whether the adjusted gross income, as modified in accordance with specifications of the Secretary of Health and Human Services for purposes of carrying out such section, of such taxpayer and, if applicable, such taxpayer's spouse, for the applicable year, exceeds the amounts specified by the Secretary of Health and Human Services in order to apply the 100 and 135 percent of the poverty lines under such section, **(II)** whether the return was a joint return, and **(III)** the applicable year, or

    **(ii)** if applicable, the fact that there is no return filed for such taxpayer for the applicable year.

59

**(B) Definition of applicable year.**--For the purposes of this subsection, the term "applicable year" means the most recent taxable year for which information is available in the Internal Revenue Service's taxpayer data information systems, or, if there is no return filed for such taxpayer for such year, the prior taxable year.

**(C) Restriction on use of disclosed information.**--Return information disclosed under this paragraph may be used only for the purposes of determining eligibility for and administering transitional assistance under section 1860D-31 of the Social Security Act.

**(20) Disclosure of return information to carry out Medicare part B premium subsidy adjustment and part D base beneficiary premium increase.--**

**(A) In general.**--The Secretary shall, upon written request from the Commissioner of Social Security, disclose to officers, employees, and contractors of the Social Security Administration return information of a taxpayer whose premium (according to the records of the Secretary) may be subject to adjustment under section 1839(i) or increase under section 1860D-13(a)(7) of the Social Security Act. Such return information shall be limited to--

**(i)** taxpayer identity information with respect to such taxpayer,

**(ii)** the filing status of such taxpayer,

**(iii)** the adjusted gross income of such taxpayer,

**(iv)** the amounts excluded from such taxpayer's gross income under sections 135 and 911 to the extent such information is available,

**(v)** the interest received or accrued during the taxable year which is exempt from the tax imposed by chapter 1 to the extent such information is available,

**(vi)** the amounts excluded from such taxpayer's gross income by sections 931 and 933to the extent such information is available,

**(vii)** such other information relating to the liability of the taxpayer as is prescribed by the Secretary by regulation as might indicate in the case of a taxpayer who is an individual described in subsection (i)(4)(B)(iii) of section 1839 of the Social Security Act that the amount of the premium of the taxpayer under such section may be subject to adjustment under subsection (i) of such section or increase under section 1860D-13(a)(7) of such Act and the amount of such adjustment, and

60

**(viii)** the taxable year with respect to which the preceding information relates.

**(B) Restriction on use of disclosed information.**--

**(i) In general.**--Return information disclosed under subparagraph (A) may be used by officers, employees, and contractors of the Social Security Administration only for the purposes of, and to the extent necessary in, establishing the appropriate amount of any premium adjustment under such section 1839(i) or increase under such section 1860D-13(a)(7) or for the purpose of resolving taxpayer appeals with respect to any such premium adjustment or increase.

**(ii) Disclosure to other agencies.**--Officers, employees, and contractors of the Social Security Administration may disclose--

**(I)** the taxpayer identity information and the amount of the premium subsidy adjustment or premium increase with respect to a taxpayer described in subparagraph (A) to officers, employees, and contractors of the Centers for Medicare and Medicaid Services, to the extent that such disclosure is necessary for the collection of the premium subsidy amount or the increased premium amount,

**(II)** the taxpayer identity information and the amount of the premium subsidy adjustment or the increased premium amount with respect to a taxpayer described in subparagraph (A) to officers and employees of the Office of Personnel Management and the Railroad Retirement Board, to the extent that such disclosure is necessary for the collection of the premium subsidy amount or the increased premium amount,

**(III)** return information with respect to a taxpayer described in subparagraph (A) to officers and employees of the Department of Health and Human Services to the extent necessary to resolve administrative appeals of such premium subsidy adjustment or increased premium, and

**(IV)** return information with respect to a taxpayer described in subparagraph (A) to officers and employees of the Department of Justice for use in judicial proceedings to the extent necessary to carry out the purposes described in clause (i).

61

**(21) Disclosure of return information to carry out eligibility requirements for certain programs.**--

**(A) In general.**--The Secretary, upon written request from the Secretary of Health and Human Services, shall disclose to officers, employees, and contractors of the Department of Health and Human Services return information of any taxpayer whose income is relevant in determining any premium tax credit under section 36B or any cost-sharing reduction under section 1402 of the Patient Protection and Affordable Care Act or eligibility for participation in a State medicaid program under title XIX of the Social Security Act, a State's children's health insurance program under title XXI of the Social Security Act, or a basic health program under section 1331 of Patient Protection and Affordable Care Act. Such return information shall be limited to--

**(i)** taxpayer identity information with respect to such taxpayer,

**(ii)** the filing status of such taxpayer,

**(iii)** the number of individuals for whom a deduction is allowed under section 151 with respect to the taxpayer (including the taxpayer and the taxpayer's spouse),

**(iv)** the modified adjusted gross income (as defined in section 36B) of such taxpayer and each of the other individuals included under clause (iii) who are required to file a return of tax imposed by chapter 1 for the taxable year,

**(v)** such other information as is prescribed by the Secretary by regulation as might indicate whether the taxpayer is eligible for such credit or reduction (and the amount thereof), and

**(vi)** the taxable year with respect to which the preceding information relates or, if applicable, the fact that such information is not available.

**(B) Information to exchange and State agencies.**--The Secretary of Health and Human Services may disclose to an Exchange established under the Patient Protection and Affordable Care Act or its contractors, or to a State agency administering a State program described in subparagraph (A) or its contractors, any inconsistency between the information provided by the Exchange or State agency to the Secretary and the information provided to the Secretary under subparagraph (A).

**(C) Restriction on use of disclosed information.**--Return information disclosed under subparagraph (A) or (B) may be used by officers, employees, and contractors of the Department of Health and

Human Services, an Exchange, or a State agency only for the purposes of, and to the extent necessary in--

> **(i)** establishing eligibility for participation in the Exchange, and verifying the appropriate amount of, any credit or reduction described in subparagraph (A),
>
> **(ii)** determining eligibility for participation in the State programs described in subparagraph (A).

**(22) Disclosure of return information to department of health and human services for purposes of enhancing medicare program integrity.**--

> **(A) In general.**--The Secretary shall, upon written request from the Secretary of Health and Human Services, disclose to officers and employees of the Department of Health and Human Services return information with respect to a taxpayer who has applied to enroll, or reenroll, as a provider of services or supplier under the Medicare program under title XVIII of the Social Security Act. Such return information shall be limited to--
>
> > **(i)** the taxpayer identity information with respect to such taxpayer;
> >
> > **(ii)** the amount of the delinquent tax debt owed by that taxpayer; and
> >
> > **(iii)** the taxable year to which the delinquent tax debt pertains.
>
> **(B) Restriction on disclosure.**--Return information disclosed under subparagraph (A) may be used by officers and employees of the Department of Health and Human Services for the purposes of, and to the extent necessary in, establishing the taxpayer's eligibility for enrollment or reenrollment in the Medicare program, or in any administrative or judicial proceeding relating to, or arising from, a denial of such enrollment or reenrollment, or in determining the level of enhanced oversight to be applied with respect to such taxpayer pursuant to section 1866(j)(3) of the Social Security Act.
>
> **(C) Delinquent tax debt.**--For purposes of this paragraph, the term "delinquent tax debt" means an outstanding debt under this title for which a notice of lien has been filed pursuant to section 6323, but the term does not include a debt that is being paid in a timely manner pursuant to an agreement under section 6159 or 7122, or a debt with respect to which a collection due process hearing under section 6330 is requested, pending, or completed and no payment is required.

**(m) Disclosure of taxpayer identity information.**--

**(1) Tax refunds.**--The Secretary may disclose taxpayer identity information to the press and other media for purposes of notifying persons entitled to tax refunds when the Secretary, after reasonable effort and lapse of time, has been unable to locate such persons.

**(2) Federal claims.--**

**(A) In general.**--Except as provided in subparagraph (B), the Secretary may, upon written request, disclose the mailing address of a taxpayer for use by officers, employees, or agents of a Federal agency for purposes of locating such taxpayer to collect or compromise a Federal claim against the taxpayer in accordance with sections 3711,3717, and 3718 of title 31.

**(B) Special rule for consumer reporting agency.**--In the case of an agent of a Federal agency which is a consumer reporting agency (within the meaning of section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f))), the mailing address of a taxpayer may be disclosed to such agent under subparagraph (A) only for the purpose of allowing such agent to prepare a commercial credit report on the taxpayer for use by such Federal agency in accordance with sections 3711, 3717, and 3718 of title 31.

**(3) National Institute for Occupational Safety and Health.**--Upon written request, the Secretary may disclose the mailing address of taxpayers to officers and employees of the National Institute for Occupational Safety and Health solely for the purpose of locating individuals who are, or may have been, exposed to occupational hazards in order to determine the status of their health or to inform them of the possible need for medical care and treatment.

**(4) Individuals who owe an overpayment of Federal Pell grants or who have defaulted on student loans administered by the Department of Education.--**

**(A) In general.**--Upon written request by the Secretary of Education, the Secretary may disclose the mailing address of any taxpayer--

**(i)** who owes an overpayment of a grant awarded to such taxpayer under subpart 1 of part A of title IV of the Higher Education Act of 1965, or

**(ii)** who has defaulted on a loan--

**(I)** made under part B, D, or E of title IV of the Higher Education Act of 1965, or

**(II)** made pursuant to section 3(a)(1) of the Migration and Refugee Assistance Act of 1962 to a student at an institution of higher education,

for use only by officers, employees, or agents of the Department of Education for purposes of locating such taxpayer for purposes of collecting such overpayment or loan.

**(B) Disclosure to educational institutions, etc.**--Any mailing address disclosed under subparagraph (A)(i) may be disclosed by the Secretary of Education to--

> **(i)** any lender, or any State or nonprofit guarantee agency, which is participating under part B or D of title IV of the Higher Education Act of 1965, or
>
> **(ii)** any educational institution with which the Secretary of Education has an agreement under subpart 1 of part A, or part D or E, of title IV of such Act,

for use only by officers, employees, or agents of such lender, guarantee agency, or institution whose duties relate to the collection of student loans for purposes of locating individuals who have defaulted on student loans made under such loan programs for purposes of collecting such loans.

**(5) Individuals who have defaulted on student loans administered by the Department of Health and Human Services.**--

> **(A) In general.**--Upon written request by the Secretary of Health and Human Services, the Secretary may disclose the mailing address of any taxpayer who has defaulted on a loan made under part C of title VII of the Public Health Service Act or under subpart II of part B of title VIII of such Act, for use only by officers, employees, or agents of the Department of Health and Human Services for purposes of locating such taxpayer for purposes of collecting such loan.
>
> **(B) Disclosure to schools and eligible lenders.**--Any mailing address disclosed under subparagraph (A) may be disclosed by the Secretary of Health and Human Services to--

> > **(i)** any school with which the Secretary of Health and Human Services has an agreement under subpart II of part C of title VII of the Public Health Service Act or subpart II of part B of title VIII of such Act, or
> >
> > **(ii)** any eligible lender (within the meaning of section 737(4) of such Act) participating under subpart I of part C of title VII of such Act,

for use only by officers, employees, or agents of such school or eligible lender whose duties relate to the collection of student loans for purposes of locating individuals who have defaulted on student

loans made under such subparts for the purposes of collecting such loans.

**(6) Blood Donor Locator Service.--**

**(A) In general.**--Upon written request pursuant to section 1141 of the Social Security Act, the Secretary shall disclose the mailing address of taxpayers to officers and employees of the Blood Donor Locator Service in the Department of Health and Human Services.

**(B) Restriction on disclosure.**--The Secretary shall disclose return information under subparagraph (A) only for purposes of, and to the extent necessary in, assisting under the Blood Donor Locator Service authorized persons (as defined in section 1141(h)(1) of the Social Security Act) in locating blood donors who, as indicated by donated blood or products derived therefrom or by the history of the subsequent use of such blood or blood products, have or may have the virus for acquired immune deficiency syndrome, in order to inform such donors of the possible need for medical care and treatment.

**(C) Safeguards.**--The Secretary shall destroy all related blood donor records (as defined in section 1141(h)(2) of the Social Security Act) in the possession of the Department of the Treasury upon completion of their use in making the disclosure required under subparagraph (A), so as to make such records undisclosable.

**(7) Social security account statement furnished by Social Security Administration.**--Upon written request by the Commissioner of Social Security, the Secretary may disclose the mailing address of any taxpayer who is entitled to receive a social security account statement pursuant to section 1143(c) of the Social Security Act, for use only by officers, employees or agents of the Social Security Administration for purposes of mailing such statement to such taxpayer.

**(n) Certain other persons.**--Pursuant to regulations prescribed by the Secretary, returns and return information may be disclosed to any person, including any person described in section 7513(a), to the extent necessary in connection with the processing, storage, transmission, and reproduction of such returns and return information, the programming, maintenance, repair, testing, and procurement of equipment, and the providing of other services, for purposes of tax administration.

**(o) Disclosure of returns and return information with respect to certain taxes.--**

**(1) Taxes imposed by subtitle E.--**

**(A) In general.**--Returns and return information with respect to taxes imposed by subtitle E (relating to taxes on alcohol, tobacco, and firearms) shall be open to inspection by or disclosure to officers and

employees of a Federal agency whose official duties require such inspection or disclosure.

**(B) Use in certain proceedings.**--Returns and return information disclosed to a Federal agency under subparagraph (A) may be used in an action or proceeding (or in preparation for such action or proceeding) brought under section 625 of the American Jobs Creation Act of 2004 for the collection of any unpaid assessment or penalty arising under such Act.

**(2) Taxes imposed by chapter 35.**--Returns and return information with respect to taxes imposed by chapter 35 (relating to taxes on wagering) shall, notwithstanding any other provision of this section, be open to inspection by or disclosure only to such person or persons and for such purpose or purposes as are prescribed by section 4424.

**(p) Procedure and recordkeeping.--**

**(1) Manner, time, and place of inspections.**--Requests for the inspection or disclosure of a return or return information and such inspection or disclosure shall be made in such manner and at such time and place as shall be prescribed by the Secretary.

**(2) Procedure.--**

**(A) Reproduction of returns.**--A reproduction or certified reproduction of a return shall, upon written request, be furnished to any person to whom disclosure or inspection of such return is authorized under this section. A reasonable fee may be prescribed for furnishing such reproduction or certified reproduction.

**(B) Disclosure of return information.**--Return information disclosed to any person under the provisions of this title may be provided in the form of written documents, reproductions of such documents, films or photoimpressions, or electronically produced tapes, disks, or records, or by any other mode or means which the Secretary determines necessary or appropriate. A reasonable fee may be prescribed for furnishing such return information.

**(C) Use of reproductions.**--Any reproduction of any return, document, or other matter made in accordance with this paragraph shall have the same legal status as the original, and any such reproduction shall, if properly authenticated, be admissible in evidence in any judicial or administrative proceeding as if it were the original, whether or not the original is in existence.

**(3) Records of inspection and disclosure.--**

**(A) System of recordkeeping.**--Except as otherwise provided by this paragraph, the Secretary shall maintain a permanent system of

standardized records or accountings of all requests for inspection or disclosure of returns and return information (including the reasons for and dates of such requests) and of returns and return information inspected or disclosed under this section and section 6104(c). Notwithstanding the provisions of section 552a(c) of title 5, United States Code, the Secretary shall not be required to maintain a record or accounting of requests for inspection or disclosure of returns and return information, or of returns and return information inspected or disclosed, under the authority of subsections[2] (c), (e), (f)(5), (h)(1), (3)(A), or (4), (i)(4), or (8)(A)(ii), (k)(1), (2), (6), (8), or (9), (l)(1), (4)(B), (5), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17), or (18), (m), or (n). The records or accountings required to be maintained under this paragraph shall be available for examination by the Joint Committee on Taxation or the Chief of Staff of such joint committee. Such record or accounting shall also be available for examination by such person or persons as may be, but only to the extent, authorized to make such examination under section 552a(c)(3) of title 5, United States Code.

**(B) Report by the Secretary.**--The Secretary shall, within 90 days after the close of each calendar year, furnish to the Joint Committee on Taxation a report with respect to, or summary of, the records or accountings described in subparagraph (A) in such form and containing such information as such joint committee or the Chief of Staff of such joint committee may designate. Such report or summary shall not, however, include a record or accounting of any request by the President under subsection (g) for, or the disclosure in response to such request of, any return or return information with respect to any individual who, at the time of such request, was an officer or employee of the executive branch of the Federal Government. Such report or summary, or any part thereof, may be disclosed by such joint committee to such persons and for such purposes as the joint committee may, by record vote of a majority of the members of the joint committee, determine.

**(C) Public report on disclosures.**--The Secretary shall, within 90 days after the close of each calendar year, furnish to the Joint Committee on Taxation for disclosure to the public a report with respect to the records or accountings described in subparagraph (A) which--

    **(i)** provides with respect to each Federal agency, each agency, body, or commission described in subsection (d), (i)(3)(B)(i) or

(7)(A)(ii) or (l)(6), and the Government Accountability Office the number of--

>> **(I)** requests for disclosure of returns and return information,
>>
>> **(II)** instances in which returns and return information were disclosed pursuant to such requests or otherwise,
>>
>> **(III)** taxpayers whose returns, or return information with respect to whom, were disclosed pursuant to such requests, and

> **(ii)** describes the general purposes for which such requests were made,

**(4) Safeguards.**--Any Federal agency described in subsection (h)(2), (h)(5), (i)(1), (2), (3), (5), or (7), (j)(1), (2), or (5), (k)(8) or (10), (l)(1), (2), (3), (5), (10), (11), (13), (14), (17), or (22) or (o)(1)(A), the Government Accountability Office, the Congressional Budget Office, or any agency, body, or commission described in subsection (d), (i)(3)(B)(i) or 7(A)(ii), or (k)(10), (l)(6), (7), (8), (9), (12), (15), or (16), any appropriate State officer (as defined in section 6104(c)), or any other person described in subsection (k)(10), subsection (l)(10), (16), (18), (19), or (20), or any entity described in subsection (l)(21), shall, as a condition for receiving returns or return information--

> **(A)** establish and maintain, to the satisfaction of the Secretary, a permanent system  standardized records with respect to any request, the reason for such request, and the date of such request made by or of it and any disclosure of return or return information made by or to it;
>
> **(B)** establish and maintain, to the satisfaction of the Secretary, a secure area or place in which such returns or return information shall be stored;
>
> **(C)** restrict, to the satisfaction of the Secretary, access to the returns or return information only to persons whose duties or responsibilities require access and to whom disclosure may be made under the provisions of this title;
>
> **(D)** provide such other safeguards which the Secretary determines (and which he prescribes in regulations) to be necessary or appropriate to protect the confidentiality of the returns or return information;
>
> **(E)** furnish a report to the Secretary, at such time and containing such information as the Secretary may prescribe, which describes the procedures established and utilized by such agency, body, or commission, the Government Accountability Office, or the

Congressional Budget Office for ensuring the confidentiality of returns and return information required by this paragraph; and

**(F)** upon completion of use of such returns or return information--

> **(i)** in the case of an agency, body, or commission described in subsection (d), (i)(3)(B)(i), (k)(10), or (l)(6), (7), (8), (9), or (16), any appropriate State officer (as defined in section 6104(c)), or any other person described in subsection (k)(10) or subsection (l)(10), (16), (18), (19), or (20) return to the Secretary such returns or return information (along with any copies made therefrom) or make such returns or return information undisclosable in any manner and furnish a written report to the Secretary describing such manner,
>
> **(ii)** in the case of an agency described in subsections[2] (h)(2), (h)(5), (i)(1), (2), (3), (5) or (7), (j)(1) or (2), (k)(8) or (10), (l)(1), (2), (3), (5), (10), (11), (12), (13), (14), (15), (17), or (22), or (o)(1)(A) or any entity described in subsection (l)(21),,,[4] the Government Accountability Office, or the Congressional Budget Office, either--
>
>> **(I)** return to the Secretary such returns or return information (along with any copies made therefrom),
>>
>> **(II)** otherwise make such returns or return information undisclosable, or
>>
>> **(III)** to the extent not so returned or made undisclosable, ensure that the conditions of subparagraphs (A), (B), (C), (D), and (E) of this paragraph continue to be met with respect to such returns or return information, and
>
> **(iii)** in the case of the Department of Health and Human Services for purposes of subsection (m)(6), destroy all such return information upon completion of its use in providing the notification for which the information was obtained, so as to make such information undisclosable;

except that the conditions of subparagraphs (A), (B), (C), (D), and (E) shall cease to apply with respect to any return or return information if, and to the extent that, such return or return information is disclosed in the course of any judicial or administrative proceeding and made a part of the public record thereof. If the Secretary determines that any such agency, body, or commission, including an agency, an appropriate State officer (as defined in section 6104(c)), or any other person described in subsection (k)(10) or subsection (l)(10), (16), (18), (19), or (20) or any entity described in subsection (l)(21),,[4] or the

70

Government Accountability Office or the Congressional Budget Office, has failed to, or does not, meet the requirements of this paragraph, he may, after any proceedings for review established under paragraph (7), take such actions as are necessary to ensure such requirements are met, including refusing to disclose returns or return information to such agency, body, or commission, including an agency, an appropriate State officer (as defined in section 6104(c)), or any other person described in subsection (k)(10) or subsection (l)(10), (16), (18), (19), or (20) or any entity described in subsection (l)(21),,[4] or the Government Accountability Office or the Congressional Budget Office, until he determines that such requirements have been or will be met. In the case of any agency which receives any mailing address under paragraph (2), (4), (6), or (7) of subsection (m) and which discloses any such mailing address to any agent or which receives any information under paragraph (6)(A), (10), (12)(B), or (16) of subsection (l) and which discloses any such information to any agent, or any person including an agent described in subsection (l)(10) or (16), this paragraph shall apply to such agency and each such agent or other person (except that, in the case of an agent, or any person including an agent described in subsection (l)(10) or (16), any report to the Secretary or other action with respect to the Secretary shall be made or taken through such agency). For purposes of applying this paragraph in any case to which subsection (m)(6) applies, the term "return information" includes related blood donor records (as defined in section 1141(h)(2) of the Social Security Act).

**(5) Report on procedures and safeguards.**--After the close of each calendar year, the Secretary shall furnish to each committee described in subsection (f)(1) a report which describes the procedures and safeguards established and utilized by such agencies, bodies, or commissions, the Government Accountability Office, and the Congressional Budget Office for ensuring the confidentiality of returns and return information as required by this subsection. Such report shall also describe instances of deficiencies in, and failure to establish or utilize, such procedures.

**(6) Audit of procedures and safeguards.--**

**(A) Audit by Comptroller General.**--The Comptroller General may audit the procedures and safeguards established by such agencies, bodies, or commissions and the Congressional Budget Office pursuant to this subsection to determine whether such safeguards and procedures meet the requirements of this subsection and ensure the

71

confidentiality of returns and return information. The Comptroller General shall notify the Secretary before any such audit is conducted.

**(B) Records of inspection and reports by the Comptroller General.**--The Comptroller General shall--

> **(i)** maintain a permanent system of standardized records and accountings of returns and return information inspected by officers and employees of the Government Accountability Office under subsection (i)(8)(A)(ii) and shall, within 90 days after the close of each calendar year, furnish to the Secretary a report with respect to, or summary of, such records or accountings in such form and containing such information as the Secretary may prescribe, and

> **(ii)** furnish an annual report to each committee described in subsection (f) and to the Secretary setting forth his findings with respect to any audit conducted pursuant to subparagraph (A).

The Secretary may disclose to the Joint Committee any report furnished to him under clause (i).

**(7) Administrative review.**--The Secretary shall by regulations prescribe procedures which provide for administrative review of any determination under paragraph (4) that any agency, body, or commission described in subsection (d) has failed to meet the requirements of such paragraph.

**(8) State law requirements.--**

> **(A) Safeguards.**--Notwithstanding any other provision of this section, no return or return information shall be disclosed after December 31, 1978, to any officer or employee of any State which requires a taxpayer to attach to, or include in, any State tax return a copy of any portion of his Federal return, or information reflected on such Federal return, unless such State adopts provisions of law which protect the confidentiality of the copy of the Federal return (or portion thereof) attached to, or the Federal return information reflected on, such State tax return.

> **(B) Disclosure of returns or return information in State returns.**--Nothing in subparagraph (A) shall be construed to prohibit the disclosure by an officer or employee of any State of any copy of any portion of a Federal return or any information on a Federal return which is required to be attached or included in a State return to another officer or employee of such State (or political subdivision of such State) if such disclosure is specifically authorized by State law.

72

**(q) Regulations.**--The Secretary is authorized to prescribe such other regulations as are necessary to carry out the provisions of this section.

28 U.S.C. § 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

28 U.S.C. § 1331. Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.